UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-2117(DSD/SRN)

Sunny Fresh Foods, Inc.,

Plaintiff,

v.

**ORDER**

Michael Foods, Inc., and
North Carolina State University,

Defendants.

Felicia J. Boyd, Esq., Lori A. Wagner, Esq., Brian B. O'Neill, Esq., William L. Roberts, Esq. and Faegre & Benson, 2200 Wells Fargo Center, 90 South 7th Street, Minneapolis, MN 55402, and Steven C. Schroer, Esq. Philip T. Petti, Esq., Timothy P. Maloney, Esq. and Fitch, Even, Tabin & Flannery, 120 LaSalle Street South, Suite 1600, Chicago, IL 60603 counsel for plaintiff.

Justin H. Perl, Esq., Geoffrey P. Jarpe, Esq., Richard A. Kempf, Esq., and Maslon, Edelman, Borman & Brand, 3300 Wells Fargo Center, 90 South 7th Street, Minneapolis, MN 55402 and Richard P. Vitek, Esq., James D. Myers, Esq., D. Randall, Ayers, Esq. and Myers, Bigel, Sibley & Sajovec, P.O. Box 37428, Raleigh, NC 27627, counsel for defendants.

This matter is before the court upon plaintiff's motion for partial summary judgment on plaintiff's first cause of action, defendants' counter motion for partial summary judgment on plaintiff's first cause of action and plaintiff's motion for partial summary judgment on counts II-V of defendants' counterclaims. Based upon a review of the file, record and

FILED 8-23-02
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. ______
Deputy Clerk's Initials ______

proceedings herein, and for the reasons stated, the court denies plaintiff's motion for partial summary judgment on plaintiff's first cause of action, grants defendants' counter motion for summary judgment on plaintiff's first cause of action and grants plaintiff's motion for summary judgment on counts II-V of defendants' counterclaims.

## BACKGROUND

Plaintiff Sunny Fresh Foods, Inc. ("Sunny Fresh") is the declaratory judgment plaintiff in this patent case. The four patents-in-suit – U.S. Reissued Patent RE37,225E ("the '225 Patent"), U.S. Patent No. 4,808,425 ("the '425 Patent"), U.S. Patent No. 4,957,759 ("the '759 Patent"), and U.S. Patent No. 4,994,291 ("the '291 Patent") – are owned by defendant North Carolina State University ("NCSU") and are exclusively licensed to defendant Michael Foods, Inc. (collectively "Michael Foods").

### I. The Patents-in-Suit

The patents-in-suit relate to a process by which liquid egg products can be "ultra-pasteurized" in order to extend their shelf life. The inventors developed a process by which liquid egg products could be "ultra-pasteurized" at temperatures higher than conventionally was thought possible without destroying the functionality of the egg. (See Stewart Decl. Ex. 2, '425 Patent,

Col. 2, ll. 42-56.) The result was liquid egg products having a shelf life of four to thirty-six weeks. (See id., Col. 17, ll. 17-33.)

**II. Prior and Present Litigation**

By 1989, at least two other egg processors, Bartow Foods, Inc. ("Bartow") and Papetti's High Grade Egg Products ("Papetti's"), had introduced their own extended shelf life liquid egg products. Michael Foods sued Bartow and Papetti's for patent infringement. In March 1992, the jury in the Bartow case found that the '425 Patent was valid, enforceable and willfully infringed by Bartow. (Kempf Aff., Ex. 7.) Bartow then filed for bankruptcy. It did not appeal the jury verdict.

In the Papetti's case, the parties filed several summary judgment motions on liability issues. In a series of decisions, Judge Barry held that no reasonable juror could conclude that the NCSU patents were invalid, unenforceable or not infringed by Papetti's. (Kempf Aff., Ex. 8-9.) On appeal, the United States Court of Appeals for the Federal Circuit affirmed Judge Barry's findings. (Kempf Aff., Ex. 10.) The Papetti's case ultimately ended with a stipulated dismissal in 1997, after Michael Foods acquired Papetti's.

By 1994, Michael Foods was involved in two additional patent infringement lawsuits, one against Nulaid Foods, Inc. ("Nulaid") and the second against Sunny Fresh ("Sunny Fresh I"). During this time,

competitors of Michael Foods filed several requests for reexamination of the NCSU patents with the patent office and several protests in a reissue proceeding involving one of the NCSU patents.

In December 1994, the Nulaid litigation was stayed pending the conclusion of the patent office proceedings. (Kempf Aff., Ex. 12.) Nulaid and Michael Foods subsequently negotiated a settlement agreement.

By November, 1995, Michael Foods asserts that it was clear that at least some of the claims that were being adjudicated in Sunny Fresh I would differ from the claims that ultimately would be issued at the conclusion of the reexamination proceedings and that Sunny Fresh and Michael Foods therefore agreed to a stay in Sunny Fresh I. However, the court in Sunny Fresh I declined to stay the proceedings. The court instead suggested that the parties dismiss their claims without prejudice.

Following the court's suggestion, on November 1, 1995, the parties executed a stipulated dismissal agreement (the "agreement"), in which the parties jointly agreed to dismiss Sunny Fresh I without prejudice pending the conclusion of certain Patent Office proceedings.[1] (Kempf Aff. Opp'n to Pl.'s Mot. for Partial Summ. J.,

---

[1] The agreement provides in relevant part:

> WHEREAS, the court denied the parties' joint request for a stay and indicated that it would entertain a joint dismissal of the action without prejudice;

(continued...)

Ex. 1 at 1 (hereinafter "Kempf Aff. 2").) Under the terms of the agreement, Sunny Fresh was granted a "safe harbor" from patent infringement damages during a "dismissal period." The safe harbor began upon the court's entry of the Sunny Fresh I dismissal order on November 2, 1995, and ended when the contractually-defined

---

[1](...continued)

AND, WHEREAS, Michael Foods, NCSU and Sunny Fresh all wish to accommodate the Court's needs and to dismiss the Civil Action without prejudice subject to the terms and conditions stated herein, it being the mutual intention of the parties to accomplish by this Agreement as nearly as possible what the parties sought to accomplish in the Stay Agreement:

Michael Foods, NCSU and Sunny Fresh AGREE as follows:

1. Michael Foods, NCSU and Sunny Fresh will jointly move the Court in the Civil Action for a dismissal without prejudice of all proceedings in the Civil Action in the form of the DISMISSAL ORDER attached to the AGREEMENT as Exhibit B until the Patent Office Proceedings are final.

2. Should the Court in the Civil Action enter the Dismissal Order, Sunny Fresh shall not now or hereafter be liable to Michael Foods or NCSU for damages, royalties, costs or expenses (including attorneys' fees) of any kind or nature related to any claims asserted in the Civil Action arising out of any Sunny Fresh activities whatsoever during the duration of the Dismissal Period as defined in paragraph 3 hereon.

3. The Dismissal Period provided for herein shall commence upon execution of the Dismissal Order by the Court in the Civil Action and extend until all presently pending Patent Office Proceedings relating to the patents in suit ... are **final. "Final" shall include the mailing of notices of allowance in said proceedings or the conclusion of any and all appeals therefrom.**

(Kempf Aff. 2, Ex. 1, pp. 1-2 (emphasis added).)

"dismissal period" expired. The agreement specifically provides that the "dismissal period" expires when "all presently pending Patent Office Proceedings relating to the patents in suit ... are final." (Kempf Aff. 2, Ex. 1, p. 2.)

Plaintiff now moves for partial summary judgment on the meaning of the term "final" as used in the parties November 1, 1995, agreement and defendants file a counter motion. Plaintiff also moves for partial summary judgment on count II-V of defendants' counterclaims. Based on a review of the file, record and proceedings herein, and for the reasons stated, the court denies plaintiff's motion for partial summary judgment on plaintiff's first cause of action, grants defendants' counter motion for summary judgment on plaintiff's first cause of action and grants plaintiff's motion for summary judgment on counts II-V of defendants' counterclaims.

**DISCUSSION**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)(quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23. Using this standard, the court considers the parties motions for partial summary judgment in turn.

## I. Plaintiff's Motion for Partial Summary Judgment on Plaintiff's First Cause of Action and Defendants' Counter Motion

Under Minnesota law, the construction and effect of a contract is a question of law, unless a contract's terms are ambiguous. Jacobs v. Pickands Mather & Co., 933 F.2d 652, 657 (8th Cir. 1991); Servais v. T.J. Mgmt. of Minneapolis, Inc., 973 F. Supp. 885, 892 (D. Minn. 1997). A contractual term is ambiguous if it is

susceptible to more than one interpretation. Brookfield Trade Ctr., Inc. v. County of Ramsey, 584 N.W.2d 390, 394 (Minn. 1998). The court determines whether a contract is ambiguous as a matter of law. Boat Dealers' Alliance, Inc. v. Outboard Marine Corp., 182 F.3d 619, 621 (8th Cir. 1999). Summary judgment is appropriate when a contract is unambiguous. See Lehman Bros. Kuhn Loeb, Inc. v. Clark Oil and Refining Corp., 739 F.2d 1313, 1317 (8th Cir. 1984).

In construing a contract, the court must "give effect to the intention of the parties as expressed in the language they used in drafting the whole contract." Art Goebel, Inc. v. North Suburban Agencies, 567 N.W.2d 511, 515 (Minn. 1997). To ascertain the parties intentions, the court must interpret the contract as a whole and attempt to harmonize all the contract's terms. See, e.g., Jacobs, 933 F.2d at 657; Servais, 973 F. Supp. at 892; Chergosky v. Crosstown Bell, Inc., 463 N.W.2d 522, 525 (Minn. 1990); Brookfield, 584 N.W.2d at 394; SO Designs USA v. Rollerblade, Inc., 620 N.W.2d 48, 53 (Minn. Ct. App. 2000); Republic Nat'l Life Ins. v. Lorraine Realty Corp., 279 N.W.2d 349, 354 (Minn. 1979). The court must give the language of the contract its plain and ordinary meaning. See, e.g., id.; Brookfield, 548 N.W.2d at 394; Servais, 973 F. Supp. at 892; SO Design USA, 620 N.W.2d at 52.

The court does not consider extrinsic evidence when determining contractual ambiguity. In re Hennepin County 1986 Recycling Bond Litigation, 540 N.W.2d 494, 498 (Minn. 1995). If the contract is

unambiguous, the parties to the agreement are entitled to rely solely on the clear wording of their agreement to define their rights and responsibilities thereunder. See, e.g., Metropolitan Sports Comm'n v. General Mills, Inc., 470 N.W.2d 118, 123 (Minn. 1991)(stating that, where there is no ambiguity, the court must determine the parties' intentions from the language used); Farkas v. Hartford Accident & Indem. Co., 173 N.W.2d 21, 24 (Minn. 1969)(holding that "'[t]he contract rights of the parties must be determined from the language used in the contract where it is unambiguous....'")(quotation omitted). Under such circumstances, the rights and responsibilities of the parties are to be determined by examining the four corners of the relevant documents. See, e.g., MacKenzie v. Summit Nat'l Bank, 363 N.W.2d 116, 121 (Minn. Ct. App. 1985)(holding that "'[p]eople who sign documents which are plainly written must expect to be held liable thereon. Otherwise written documents would be entirely worthless and chaos would prevail in our business relations.'")(quoting Watkins Prods., Inc. v. Butterfield, 144 N.W.2d 56, 58 (Minn. 1966)).

Here, the November 1995 agreement between Sunny Fresh and Michael Foods provides in relevant part:

> 3. The Dismissal Period provided for herein shall commence upon execution of the Dismissal Order by the Court in the Civil Action and extend until all presently pending Patent Office Proceedings relating to the patent in suit ... are final. **"Final" shall include the mailing of notices of allowance in said proceedings or the conclusion of any and all**

> **appeals therefrom.** (Kempf Aff. 2, Ex. 1, p. 2 (emphasis added).)

The parties dispute the meaning of the term final as used in the agreement. Sunny Fresh contends that the '408 reissue proceeding became "final" upon the surrender of the '408 patent and the issuance of Reissued Patent RE 37,225E on June 12, 2001, while Michael Foods contends that finality occurred with the mailing of the last notice of allowance on September 1, 2000.

The plain language of the agreement between Sunny Fresh and Michael Foods unambiguously defines the term "final" to include "the mailing of notices of allowance in said proceeding or the conclusion of any and all appeals therefrom." (Kempf Aff. 2, Ex. 1, p. 2.) Put another way, the agreement clearly provides that "finality" may occur upon the happening of either the mailing of a notice of allowance <u>or</u> the conclusion of all appeals. While Sunny Fresh argues that the use of the word "or" illustrates that a notice of allowance is insufficient to determine finality, the parties would have used the word "<u>and</u>" instead of "<u>or</u>" if they had intended to express that a notice of allowance is insufficient to establish finality.

Moreover, contrary to Sunny Fresh's assertion, the use of the word "include" in the definition of "final" does not create ambiguity. The term "include" is a term of expansion, which does not exclude items not specifically enumerated. <u>See, e.g.</u>, <u>CIM Ins. Corp. v. Midpac Auto Ctr., Inc.</u>, 108 F. Supp. 2d 1092, 1099 (D.

Hawaii 2000); Argosy Limited v. Hennigan, 404 F.2d 14, 20 (5th Cir. 1968); Markel v. Ohio State Med. Board, 574 N.E.2d 1115, 1117 (Ohio Ct. App. 1989); see also MPEP § 2111.03 (8th ed. 2001)(explaining the term "including" as "inclusive or open-ended and does not exclude additional, unrecited elements or method steps"). While the term "include" incorporates into the contract's language other events that may have prevented the last proceeding from becoming final, those events create no ambiguity because they never occurred.

Because the definition of the term "final" is clear from the four corners of the document, the court need not consider extrinsic evidence, such as *Black's Law Dictionary* or deposition testimony, in interpreting the term. Metropolitan Sports Comm'n v. General Mills, Inc., 470 N.W.2d 118, 123 (Minn. 1991)(stating that, where there is no ambiguity, the court must determine the parties' intentions from the language used); Farkas v. Hartford Accident & Indem. Co., 173 N.W.2d 21, 24 (Minn. 1969)(holding that "'[t]he contract rights of the parties must be determined from the language used in the contract where it is unambiguous....'")(quotation omitted); see also In re Hennepin County, 540 N.W.2d at 498 ("The court generally does not consider extrinsic evidence when determining contractual ambiguity...."). Moreover, without ambiguity, the court does not consider whether to construe the

document against its drafter. See Turner v. Alpha Phi Sorority House, 276 N.W.2d 63, 66 (Minn. 1979)(stating that an ambiguity must be resolved against the party who drafted the disputed language.)

Instead, based upon that explicit definition of the term "final" in the November 1995 agreement, the court concludes that the '408 reissue proceeding became final upon the mailing of the last notice of allowance of claims, which occurred on September 1, 2000. The court therefore denies Sunny Fresh's motion for partial summary judgment on plaintiff's first cause of action and grants Michael Foods' counter motion for partial summary judgment.

## II. Plaintiff's Motion for Partial Summary Judgment Dismissing Counts II-V of Defendants' Counterclaims

Sunny Foods also moves for partial summary judgment on counts II through V of defendants' counterclaims. Count II alleges breach of duty of good faith, count III alleges breach of contract, count IV alleges Fraud in the Inducement and count V alleges unfair competition in violation of North Carolina law. The court grants Sunny Foods' motion for partial summary judgment on each counterclaim.

### A. Count II: Breach of Duty of Good Faith

Under Minnesota law, every contract includes an implied contract of good faith and fair dealing requiring that a party not unjustifiably hinder another party's performance of the contract. White Stone Partners, LP v. Piper Jaffray Cos., 978 F. Supp. 878, 881 (D. Minn. 1997); In re Hennepin County, 540 N.W.2d at 502.

However, an implied contract of good faith and fair dealing "does not extend to actions beyond the scope of the underlying contract." In re Hennepin County, 540 N.W.2d at 503; see Nomeco Bldg. Specialties, Inc. v. Pella Corp., 184 F.R.D. 609, 611 (D. Minn. 1999)(quoting In re Hennepin County, 540 N.W.2d at 503); White Stone Partners, 978 F. Supp. at 881-82 ("The implied covenant of good faith and fair dealing extends only to actions within the scope of the underlying contract."). In fact, the Eighth Circuit has warned that "[c]ourts must be careful when considering good faith ... as it does not imply 'an everflowing cornucopia of wished-for legal duties.'" United States v. Basic Elec. Power Co-op., 248 F.3d 781, 796 (8th Cir. 2001)(quoting Comprehensive Care Corp. v. RehabCare Corp., 98 F.3d 1063, 1066 (8th Cir. 1996)); see also Malibu Inv. Co. v. Sparks, 996 P.2d 1043, 1048 (Utah 2000)(explaining that the court will not interpret the implied covenant of good faith to make a better contract for the parties than they made for themselves.)

Here, Michael Foods alleges that Sunny Fresh (1) extended and multiplied the proceedings before the Patent and Trademark Office ("PTO") in the reexamination and reissue proceedings of the NCSU patent without good cause and (2) conspired and colluded with third parties in the filing of additional reexamination request and/or protests of the NCSU patents. (Countercl. at ¶ 62-63.) However, Sunny Fresh's filings with the PTO does not violate the implied covenant of good faith and fair dealing because the November 1995

agreement does not limit Sunny Fresh's legal right to participate in the PTO proceedings and no other evidence illustrates that Sunny Fresh waived its right to do so. Defendants cannot use the doctrine of implied covenant of good faith to create a duty beyond the scope of the November 1995 agreement. See In re Hennepin County, 540 N.W.2d at 503; Nomeco Bldg. Specialties v. Pella Corp., 184 F.R.D. 609, 611 (D. Minn. 1999); White Stone Partners, 978 F. at 881-82. Defendants' counterclaim of breach of good faith therefore fails because the implied covenant of good faith does not prohibit plaintiff's activities.[2]

**B. Count III: Breach of Contract**

As discussed, if a contract is unambiguous, the parties to the agreement are entitled to rely solely on the clear wording of their agreement to define their rights and responsibilities thereunder. See, e.g., Metropolitan Sports Comm'n v. General Mills, Inc., 470 N.W.2d 118, 123 (Minn. 1991)(stating that, where there is no ambiguity, the court must determine the parties' intentions from the language used); Farkas v. Hartford Accident & Indem. Co., 173 N.W.2d 21, 24 (Minn. 1969)(holding that "'[t]he contract rights of the parties must be determined from the language used in the contract

---

[2] Moreover, "a cause of action for good faith and fair dealing cannot exist independent of the underlying breach of contract claim." Orthomet, Inc. v. A.B. Med., Inc., 990 F.2d 387, 392 (8th Cir. 1993). As discussed below, the court concludes that defendants' breach of contract counterclaim fails. Therefore, plaintiff's breach of good faith claim also fails.

where it is unambiguous....'")(quotation omitted). Under such circumstances, the rights and responsibilities of the parties are to be determined by examining the four corners of the relevant documents. See, e.g., MacKenzie v. Summit Nat'l Bank, 363 N.W.2d 116, 121 (Minn. Ct. App. 1985)(holding that "'[p]eople who sign documents which are plainly written must expect to be held liable thereon. Otherwise written documents would be entirely worthless and chaos would prevail in our business relations.'")(quoting Watkins Prods., Inc. v. Butterfield, 144 N.W.2d 56, 58 (Minn. 1966)).

In Joy Mfg. Co. v. Nat'l Mine Serv. Co., 810 F.2d 1127 (Fed. Cir. 1987), a patentee appealed the district court's decision to deny its motion to enjoin its competitor from allegedly violating the terms of a settlement agreement by filing a request for reexamination in the PTO. The court found that the settlement agreement prohibited the competitor from filing suit in any United States court but did not prohibit the competitor from filing a request for reexamination in the PTO. Id. at 1129-30. Based on that and other facts, the court affirmed the district court's decision to deny the patentees' motion to enjoin its competitor.

Here, as in Joy Mfg., Michael Foods' alleges that Sunny Fresh's filings with the PTO breached the parties' November 1995 agreement. However, as in Joy Mfg., Michael Foods has failed to indicate which,

if any, provision Sunny Fresh has breached,[3] and the court finds no evidence suggesting that the November 1995 agreement prohibits Sunny Fresh from filing with the PTO. Defendants even admit that "the Settlement Agreement of *Sunny Fresh I* was agreed to, in part, to bring Sunny Fresh's contention concerning the validity of the NCSU patents before the United States Patent and Trademark Office." (Ans. ¶ 52.) Thus, as in Joy Mfg., the court finds no of evidence of any breach of any of the agreement's provisions and grants Sunny

---

[3]In fact, at defendants Rule 30(b)(6) deposition, their trial counsel testified:

Q: [W]hich provision in Paragraph 2 or 3 do you claim has been breached?

A: It's not so much a breach, per se. In these provisions it's Sunny Fresh's seeking to avail itself of a provision -- of a provision that would excuse Sunny Fresh's patent- infringement liability during the dismissal period.

Q: So which provision of the agreement do you believe has been breached? With the greatest respect, I don't think I've had a direct answer to that question yet. And if you can point me to none, that's fine.

A: In the context of your question about particular words, no. In the context of the implicit requirement of good faith dealing, that's been breached.

Q: So as we sit here today, you can articulate, apart from the claim of a breach of a duty of good faith and fair dealing, no breach of any specific provision in the written agreement correct?

A: Not beyond that -- what's provided in the interrogatory response, that's right.

(Flesher Aff., Ex. 9 at 121 (emphasis added).) The court notes that defendants' interrogatory response also fails to identify specific provisions of the November 1995 agreement allegedly breached. (See Flesher Aff., Ex. 21, Def. Ans. To Interrog. No. 39)

Fresh's motion for summary judgment on count III of Michael Foods' counterclaim.

**C. Count IV: Fraudulent Inducement**

Under Minnesota law, fraud requires (1) a representation, (2) the representation must be false, (3) the representation must deal with past or present fact, (4) the fact must be material, (5) the fact must be susceptible of knowledge, (6) the representer must know the fact is false or assert it as of his own knowledge, (7) the represent must intend to have the other person induced to act or justified in acting upon it, (8) the other person must be induced to act or justified in acting, (9) that person's actions must be in reliance upon the representation, (10) that person must suffer damages and (11) the misrepresentation must be the proximate cause of injury. Western Contracting Corp. v. Down Chemical Co.,, 664 F.2d 1097, 1100-01 (Minn. Ct. App. 1981).

However, broken promises are not actionable as fraud. Int'l Travel Arrangers v. NWA, Inc., 991 F.2d 1389, 1402 (8th Cir. 1993); Kramer v. Bruns, 396 N.W.2d 627, 631 (Minn. Ct. App. 1986)("Promises to act in the future do not form the basis for a fraud action."); H.J., Inc. v. Int'l Tel. & Tel. Corp., 867 F.2d 1531, 1546 (8th Cir. 1989)("Minnesota law follows the general common law rule that in order to support a fraud claim, a misrepresentation must be of a present fact, not a future event."). The one exception is that a claim of promissory fraud may lie if, when the promise was made, the

promisor then had no intention to perform it. Int'l Travel Arrangers, 991 F.2d at 1402; H.J., Inc., 867 F.2d at 1546-47 ("a misrepresentation of a present intention could amount to fraud"). To succeed on such a claim, the party must present affirmative evidence that the promisor had no intention to perform. Hayes v. Northwood Panelboard Co., 415 N.W.2d 687, 690 (Minn. Ct. App. 1987); Vandeputte v. Soderholm, 216 N.W.2d 144, 147 (Minn. 1974)("For a misrepresentation to constitute fraud, there must be affirmative evidence that the promisor had no intention to perform at the time the promise was made."). Moreover, "a representation or expectation as to future acts or events is not a sufficient basis to support an action for fraud merely because the represented act or event did not take place...." Belisle v. Southdale Realty Co., 168 N.W.2d 361, 363 (Minn. 1969).

Here, Michael Foods claims that Sunny Fresh's attorneys made representations about Sunny Fresh's filings with the PTO that Sunny Fresh never had any intention of honoring and that Sunny Fresh never had any intention of honoring the November 1995 agreement. However, the evidence does not suggest that Sunny Fresh made any promise not to file protests with the PTO. Moreover, even if the court were to find that Sunny Fresh made such a representation, no evidence indicates that Sunny Fresh made the representation without an intention to perform or that Sunny Fresh had no intention of adhering to the November 1995 agreement. Because evidence of an

intention not to perform is lacking, the court grants Sunny Fresh's motion for summary judgment on count IV of Michael Fooods' counterclaim. See Int'l Travel Arrangers, 991 F.2d at 1403 (finding lack of evidence of an intention not to perform when evaluating party's promissory fraud claim under Minnesota law).

**D. Counterclaim V: Unfair Competition**

In counterclaim V, Michael Foods alleges a claim for unfair competition. Michael Foods specifically states:

> The actions of Sunny Fresh, including its lack of good faith dealing, breach of the Settlement Agreement and efforts to delay the finality of the reexamination and reissue proceedings, have had a substantial adverse effect on NCSU and commerce within the State of North Carolina and inflicted substantial injury to NCSU within the State of North Carolina.

(Countercl. at ¶ 77.) Michael Foods appears to base its fifth counterclaim exclusively upon the previously discussed counterclaims II-IV. For the same reason that Michael Foods' counterclaims II-IV fail, Michael Foods' counterclaim V likewise fails. The court therefore grants Sunny Fresh's motion for summary judgment on Michael Foods' fifth counterclaim.[4]

---

[4] The court denies Michael Foods' request that, pursuant to Fed. R. Civ. P. 56(f), the court order discovery of identified third-party communications.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for partial summary judgment on plaintiff's first cause of action [Docket No. 128] is denied,

2. Defendants' counter motion for partial summary judgment on plaintiff's first cause of action is granted,

3. Plaintiff's first cause of action is dismissed with prejudice,

4. Plaintiff's motion for partial summary judgment on defendants' counterclaims II-V [Docket No. 127] is granted, and

5. Defendants' counterclaims II-V are dismissed with prejudice.

Dated: August 23, 2002

David S. Doty, Judge
United States District Court