Motions, Pleadings and Filings

United States District Court,
D. Oregon.
SUN STUDS, INC., Plaintiff,
v.
ATA EQUIPMENT LEASING, INC., an Oregon corporation, Applied Theory, Inc., an Oregon corporation, and U.S. Natural Resources, a Delaware corporation,
Defendants.
**Civ. No. 78-714-RE.**

June 12, 1990.

Don H. Marmaduke, Tonkon, Torp, Galen, Marmaduke & Booth, Portland, Or., William A. Birdwell, Lane Powell Spears Lubersky, Portland, Or., for plaintiff.

David W. Axelrod, Schwabe, Williamson & Wyatt, Portland, Or., Robert L. Harrington, Portland, Or., for defendants.

REDDEN, District Judge.

*1 The background of this litigation is recorded in many trial and appellate court opinions. Should anyone wish that written material, computer technology will allow them to punch up voluminous quantities quickly. Suffice it to say that the case was filed in 1978.

The case was finally tried in 1987 resulting in, generally, a plaintiff's verdict. I granted Judgment Not Withstanding The Verdict (JNOV) and the matter was appealed. The Federal Circuit, in 1989, reversed and remanded to reinstate the damages awarded by the jury. They also ruled that the jury verdict on the laches issue, favorable to the defendant, could not stand as to sawmills because there was "not substantial evidence on which this verdict could have been reached. The judgment entered thereon is reversed." *Sun Studs, Inc. v. ATA Equipment Leasing, Inc.*, 872 F.2d 978, 993 (Fed. Cir.1989).

They then discovered that Sun Studs had not filed for JNOV on this issue, although it had filed a motion for directed verdict thereon. They decided, therefore, that vacation of the portion of their judgment relating to the issue of laches with respect to sawmills was required and remanded for a new trial. Plaintiff now moves for summary judgment, which I grant.

STANDARDS

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

To prevail on summary judgment in the case at bar, Sun Studs need not negate defendant's defense of laches in its entirety. Summary judgment is appropriate where there is a failure of an essential element of defendant's defense. The Supreme Court held:

> the burden of the moving party may be discharged by showing--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

To defeat Sun Studs, motion for summary judgment, defendant must come forward with sufficiently probative evidence as to any material fact defendant claims to be disputed. The court in *Cal. Arch. Bldg. Prod. Inc. v. Franciscan Ceramics*, 818 F.2d 1466 (9th Cir.1987), *cert. denied,* 484 U.S. 1006 (1988), held:

> if the factual context makes the non-moving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment.

*Id.* at 1468 (emphasis in original) (citations omitted).

DISCUSSION

The sole issue before me is whether laches bars plaintiff's recovery of its damages for defendant's installation of five infringing sawmills. Laches may bar plaintiff's recovery only if defendant proves that: (1) plaintiff knew or should have known of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

infringement; and with such knowledge (2) plaintiff failed for an unreasonable and inexcusable period of time to assert its patent claims against defendant; and (3) that defendant was materially prejudiced by plaintiff's delay. *See* Leinoff v. Louis Milona & Sons, Inc., 726 F.2d 734, 741 (Fed. Cir.1984). Plaintiff contends that as a matter of law, it did not unreasonably delay in asserting its claims against this defendant. I agree.

*2 Defendant has the burden to prove plaintiff's knowledge, unreasonable and inexcusable delay and that defendant was materially prejudiced as a result of such delay. Plaintiff's "delay" may be defined as that period during which plaintiff was or should have been aware of its cause of action against defendant and yet failed to apprise defendant of its intent to enforce its patent rights. If plaintiff's "delay" for purposes of laches is more than six years, the delay is *presumed* to be unreasonable and the burden shifts to the patentee or its licensee to rebut the presumption of prejudice. Bott v. Four Star Corp., 807 F.2d 1567, 1575 (Fed. Cir.1986). There is no dispute that plaintiff's delay was less than six years. Five sawmills in two classes (class B and C) are at issue here. Defendant installed these five sawmills between June 1974 and November 1976. The class C mills were found to infringe claim 2 of plaintiff's 1968 patent and the class B mills were found to infringe claims 1,2 and 5 of the 1968 patent. Plaintiff's damages for each mill were determined to be $30,000.

The period of delay begins when plaintiff knew of or should have known of defendant's infringement. However, the period cannot begin before the patent issues. Bott, 807 F.2d at 1575. The period ends when defendant knows of plaintiff's intent to enforce its rights against defendant, where plaintiff sues within a reasonable time after notice of intent, but in no event after plaintiff files suit. *Intertech Licensing Corp, v. Brown & Sharpe Mfg. Co., Inc.,* 718 F.Supp. 1423, 1434 (D. Del.1989).

Plaintiff contends that defendant's first class B infringement occurred in November 1975 and class C infringement occurred in June 1974 with the installation of the McCloud mill. Plaintiff argues that any period of delay ended on January 30, 1978 when plaintiff gave defendant express notice of its intent to sue for infringement (by letter), followed by plaintiff's filing suit within a reasonable time thereafter in August 1978. Therefore, the maximum delay period, from June 1974 until January 1978 is three years and eight months. The delay period for class B infringements in two years and two months.

Defendant argues that the period of delay is between 5 years 1 month and 5 years 6 months. Defendant contends that plaintiff knew that defendant was designing the computer process control software for a sawmill that would infringe Mason 1968 during the period plaintiff allegedly delayed issuance of the patent, March--July 1973. Defendant argues that no investigation or request for additional information was made of defendant, and that the period did not end until August 1978, when plaintiff filed suit. Defendant argues the period did not end in January 1978, when plaintiff sent a letter warning of its alleged infringement of plaintiff's automated veneer mill scanning systems (naming patents 1968, 1065 and 1579). The patent at issue here is 1968, mentioned in the letter. Defendant also argues that the Class B and Class C sawmills are not different for purposes of the delay periods.

*3 Giving defendant the benefit of the doubt, and using its calculations, the length of plaintiff's delay does not exceed six years. The burden of proof is on defendant.

Defendant argues that the "law of the case" prevents relitigation of the "reasonableness" of plaintiffs, delay. I disagree. The Federal Circuit Court specifically vacated that portion of their decision dealing with the issue of lached. Therefore, there is no "law of the case" on that issue. The slate is wiped clean. The Federal Circuit's Order provided for a retrial of the entire laches defense and does not exclude any particular element of that defense. *See* *Sun Studs,* 872 F.2d at 994.

Plaintiff cites six cases found in a computer search where laches has barred a plaintiff when the delay was less than six years. The first case is *Lukens Steel Co. v. American Locomotive Co.,* 197 F.2d 939 (2d Cir.1952), where the court stated:

> it is true that only some five years elapsed between the time Lukens learned of the infringement and the time it took affirmative action, while the period in most of the decided cases is longer. But in the usual case the patentee merely delays bringing suit for an unreasonable time after he learns of the infringement. Here the assistance of the patent presented a design embodying the patent to the infringer knowing he would use it to manufacture the frames himself, and then stood idly by while the infringer embarked on a costly expansion program. In these circumstances the five year delay was unreasonable.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Id.* at 941.

In *Advanced Hydraulics, Inc. v. Otis Elevator Co.*, 525 F.2d 477 (7th Cir.1975), plaintiff sent notice of infringement in June 1967 threatening immediate legal action. Defendant timely replied, denying infringement and asking for a more specific description of the structure believed to constitute infringement. Plaintiff never responded to defendant's reply and further failed to communicate with defendant at all until plaintiff filed the lawsuit in September 1972. *Id.* at 478-79. In the interim, defendant was prejudiced by the death of the inventor (1969) and its substantial investments in its business, which grew extensively between 1967 and 1972. The court focused on plaintiff's failure to follow-up, for an unreasonable time, loon its threat of prompt and vigorous enforcement of its patent." *Id.* The court stated:

> in the absence of any further word from [plaintiff] for a five full years, it was natural for [defendant] to be encouraged to believe that its business could proceed unmolested.

*Id.*

The third case is *Advanced Hydraulics, Inc. v. Eaton Corp.*, 415 F.Supp. 283 (N.D. Ill.1976). Plaintiff notified defendant Eaton in June 1967 of the alleged infringement. Eaton promptly responded, denying that it was infringing plaintiff's patent. *Id.* at 284. There was no further contact between the parties for approximately five years, until plaintiff filed suit in 1972. *Id.* The court applied laches finding that the delay was unexcused and that defendant was prejudiced by the death of the inventor, a material witness. *Id.* at 284-85.

*4 In *Lemelson v. Carolina Enterprises, Inc.*, 541 F.Supp. 645 (S.D. N.Y.1982), the plaintiff waited 15 years before suing defendant on claims of which plaintiff was aware in 1966 for the first infringing product. Plaintiff delayed five years in bringing suit for the second infringing product (produced in 1975). The court considered it appropriate to view the second infringing product with a delay period of five years in the context of plaintiff's first 15 year delay.

The court held that defendant's activities were open and continuous from the years 1966 to 1981. Defendant did not attempt to hide or deceive plaintiff. Plaintiff had early and continuous notice of defendant's infringements by its visits to defendant's showroom and discussion of its ideas with defendant on more than one occasion. There was an attempt to negotiate a license. *Id.* at 656-57. The court also considered the fact that plaintiff filed at least nine actions against others for infringement from 1963 forward involving the patent in suit. The court concluded that plaintiff did not diligently protect its rights, and that a delay of approximately five years on the second product waB unexcused, unreasonable and prejudicial. The defendant had produced evidence of prejudice, in that it negotiated and consummated a licensing agreement with a foreign manufacturer.

The fifth case is *In re Stuart R. Meyers Patent Litigation*, 721 F.Supp. 588 (S.D.N.Y.1989), where the court held that the defendant successfully proved substantial and material prejudice by the loss of key witnesses and important documents. *Id.* at 591. Defendant had substantially expanded and increased its product line with allegedly infringing parts, while actively and openly expanding the line. *Id.* at 592. The court granted summary judgment to defendants on the grounds of laches and estoppel. *Id.*

The final case is *Siemens Aktiengesellschaft v. Beltone Electronics Corp.*, 381 F.Supp. 57 (N.D. Ill.1974). There, plaintiff knew by February 1966 that defendant was producing an infringing product. Plaintiff concluded after examining the device that it constituted a substantial copy of plaintiff's own product. *Id.* at 62. After pursuing other litigation relating to its patent, plaintiff notified defendant of the alleged infringement in July 1971, 5 1/2 years later. *Id.* at 59-60. Plaintiff then waited an additional 19 months before filing suit. *Id.* Meanwhile the defendant had developed four new hearing aids (the infringing product) before plaintiff filed suit. *Id.* Defendant had spent $1.5 million on research and other development activities on these additional devices in the period between plaintiff's notice and filing suit. *Id.* The court found defendant was materially prejudiced by plaintiff's delay. The court reasoned, that if plaintiff's delay was measured from knowledge of infringement to filing of suit (seven years), that plaintiff's delay was presumptively unreasonable. Plaintiffs, "other litigation" excuse was inadequate because defendant did not receive notice. *Id.* at 61-62. Measured from knowledge to notice, plaintiff's delay was held unreasonable because it relied on plaintiff's silence. Plaintiff had clearly obtained adequate information to conclude, and had concluded, that there was infringement 5 1/2 years earlier.

*5 In our case, plaintiff notified defendant by letter of its intent to enforce its rights as to patent 1968 against the defendant in January 1978. Plaintiff then

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

filed suit seven months later in August 1978. I find that plaintiff's delay was reasonable as a matter of law. No exceptional circumstances (such as death or incapacity of important witnesses, loss of material documents) exist in this case. Further, defendants cannot rely on plaintiff's silence because the jury found plaintiffs are not equitably estopped. The Federal Circuit affirmed that finding. I find that defendants have failed to carry their burden to show some indicia of unreasonableness, including exceptional circumstances, in plaintiff's delay.

CONCLUSION

Plaintiff's summary judgment motion is granted. The remaining pre-trial motions are denied as moot. The trial, set for July 10, 1990, is stricken.

OPINION

(Sept. 19, 1990)

After previously awarding plaintiff prejudgment interest on its patent claims (non-laches mills) and postjudgment interest on its breach of contract and copyright infringement claims, plaintiff now petitions for prejudgment interest in the amount of $607,137.98, on its patent damages for the three Class B and two Class C sawmills installed by defendants in 1974, 1975 and 1976 (the laches mills). During the October 1976 trial, the jury found that the laches mills infringed Sun Studs Mason 1968 patent. However, the jury found that plaintiff was barred by the doctrine of laches from collecting damages on those claims. The Appeals Court for the Federal Circuit remanded the laches issue for retrial. On July 5, 1990, I granted plaintiff's summary judgment motion on the laches issue. I now grant plaintiff's request for prejudgment interest for the laches mills, relying on my Opinion and order filed December 4, 1989 and Orders filed December 11 and December 18, 1989. Plaintiff has attached an interest schedule showing the actual interest rate it paid from July 1974 to July 1990. (See Plaintiff's Exh. A to Allen's Affidavit). I considered defendants' "Surreply" filed August 28, 1990, thereby mooting defendants, request for oral argument.

*Interest on Patent Damages*

The patent statute provides that the court shall award damages adequate to compensate for the infringement together with interest and costs. 35 U.S.C. section 284. The Supreme Court held "that prejudgment interest should be awarded under section 284 absent some justification for withholding such an award." *General Motors Corp. v. Devex Corp.*, 461 U.S. 648 (1983). An award of prejudgment interest is necessary to ensure that a patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement. *Id.* at 656.

The Federal Circuit has approved compounding interest, if appropriate to compensate the patent owner. See *Studiengesellschaft Kohle, m.b.H. v. Dart Industries*, 862 F.2d 1564, 1579-80 (Fed. Cir.1980). Further, the Federal Circuit Court of Appeals has approved awards of prejudgment interest at, below and above the prime rate as within the sound discretion of the district court. *Studiengesellschaft* at 1579.

*6 Defendants object to any award of prejudgment interest on the laches mills because plaintiff "knowingly and deliberately delayed bringing its claims for infringement at those mills, and that delay prejudiced Applied Theory." Alternatively, defendants request that plaintiff's prejudgment interest award be reduced.

The Supreme Court has held that:

> [Section 284] states that interest shall be fixed by the court, and in our view it leaves the court some discretion in awarding prejudgment interest. For example, it may be appropriate to limit prejudgment interest, or perhaps even deny it altogether, where the patent owner has been responsible for undue delay in prosecuting the lawsuit.

*General Motors Corp.* at 656-57.

Defendants argue that my ruling dismissing defendants, laches defense does not limit my authority to deny prejudgment interest for the same delay. Defendants rely on a case in this district where an award of prejudgment interest was denied because of the patentee's delay, however the decision also found that the delay did not support a claim of laches. *See Mainland Industries, Inc. v. Standalls Patents Ltd.*, 229 U.S.P.Q. 43, 47 (D. Or.1985), aff'd. 799 F.2d 746 (Fed. Cir.1986).

*Mainland* held:

> In [*General Motors* ], the Supreme Court held that prejudgment interest should ordinarily be awarded absent some justification for withholding such an award. The Supreme Court gave as one such justification the case where the patent owner has been guilty of unjust delay in prosecuting the lawsuit. Upon considering the equities of this case, I decline to award Standalls prejudgment interest. Standalls was responsible for substantial

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

delay in pursuing its infringement claims. In addition, Mainland's challenge of the patent was made in good faith.
229 U.S.P.Q. at 47.

*Mainland* was affirmed by the Federal Circuit without direct reference to the denial of prejudgment interest.

However, *Mainland's* denial of prejudgment interest was based partly on the plaintiff's delay in filing suit (a delay of more than six years) and partly on the strength of defendant's defenses to the patent claims. *Id.* at 47. The second factor has since been rejected by the Federal Circuit. *See* Bio-Rad Laboratories v. Nicolet Instrument Corp., 807 F.2d 964 (Fed. Cir.1986).

Defendants also rely on Lummus Industries, Inc. v. D.M. & E. Corp., 862 F.2d 267 (Fed. Cir.1988), where the district court found the evidence insufficient to establish laches but also denied any award of prejudgment interest. *Id.* at 275. The Federal Circuit remanded for a determination of whether plaintiff's delay prejudiced defendants. The court held, "absent prejudice to the defendants, any delay by [plaintiff] does not support the denial of prejudgment interest." *Id.* Defendants here argue that it was prejudiced by plaintiff's delay but fails to specify in what respects.

*Lummus* also held that:

It is clear from *General Motors* that the withholding of prejudgment interest based on delay is the exception, not the rule, and that the discretion of the district court is not unlimited.
*7 *Id.* at 275.

Plaintiff argues that during the delay period, it was following a business strategy of pursuing potential licensees including Champion International, the manufacturer of the McCloud sawmill for its patent rather than rushing into litigation. *See* H.B. Fuller Co. v. National Starch and Chemical Corp., 689 F.Supp. 923, 953 (D. Minn.1988) ("undue delay should not be confused with prudent, deliberate action in the face of patent infringement"). Plaintiff also argues that defendants', Dr. Hunter, was aware in 1974 of plaintiff's charge of infringement against Champion International, the manufacturer of the McCloud mill. Therefore, plaintiff argues that defendants were not "unwitting infringers" of the Mason 1968 patent from 1974 to 1978.

In my Opinion filed July 12, 1990, I determined as a matter of law that plaintiff did not delay unreasonably in filing suit. I found that defendants failed to raise a genuine issue of fact as to the unreasonableness of the delay for purposes of its laches defense. Defendants have failed to show undue delay or prejudice from that delay for purposes of prejudgment interest. Further, courts have agreed that the withholding of prejudgment interest is the exception, not the rule, and that a district court's discretion in this area is not unlimited. *Lummus* at 275. Plaintiff here is entitled to prejudgment interest.

Defendants also argue that plaintiff has been reimbursed by defendants for "more than all" of the interest which plaintiff paid on its actual short term borrowing from January 1979 through the January 8, 1990 judgment because defendants have reimbursed plaintiff more than $800,000 for interest as a result of my 1989 ruling. However, the prejudgment interest paid by defendants as a result of my December 1989 opinion was for the non-laches mills and its copyright and contract claims. Plaintiff's current request for prejudgment interest is for the three Class B and two Class C sawmills (the laches mills).

Alternatively, defendants argue that the amount of prejudgment interest requested by plaintiff is unreasonable. First, defendants argue that plaintiff should not be awarded prejudgment interest based upon USNB's prime rate because plaintiff's borrowings were at lower rates. Defendants argue that payment of prejudgment interest at rates which exceed 15% results in a substantial windfall when plaintiff only paid 8-12% on its actual borrowing. However, plaintiff's Exh. A shows the interest rate actually charged to plaintiff each month on its short term borrowing. In my Opinion filed December 4, 1989, I awarded plaintiff prejudgment interest on its patent claims at the rate of interest *actually paid* by plaintiff. Plaintiff is entitled to be compensated for the actual amount of interest it paid.

Defendants also argue that plaintiff is not entitled to interest prior to May 1978 because plaintiff did not contend that there was a sawmill infringement or request a license until that time. Defendants claim that plaintiff had actual knowledge of defendants' work for U.S. Plywood in 1973 and its work for others thereafter. Defendants claim that plaintiff did not demand a license, nor did it notify defendants of a claim that Mason '968 applied to its activities.

*8 Defendants' argument that an award of prejudgment interest is to be calculated from the date

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the infringer would have entered into a royalty agreement has been rejected by the Supreme Court. *See General Motors* at 655. *General Motors* specifically held that interest runs *from the date of the infringement. Id.* at 655, n.9. Defendants cite no authority to support its demand to limit prejudgment interest to the post suit period.

Regarding Sohn's March 1973 letter to Dr. Hunter, first, the Mason 1968 patent had not even issued in March 1973 so there was nothing to infringe at the time; and second, at that time, defendants had not done any work for plaintiff on computer control systems for sawmills. Plaintiff alleges that Sohn was concerned in his letter about breach of the confidentiality provisions in the May 21, 1971 agreement between plaintiff and defendants. When Sohn opined about work for U.S. Plywood using "similar conceptual analysis" to work by defendants for plaintiff, Sohn was not referring to defendants, computer control systems which later infringed the Mason 1968 patent because defendants had done no such work for plaintiff at that time.

CONCLUSION

Plaintiff's motion for prejudgment interest for the laches mills is granted. Defendants have failed to demonstrate undue delay for purposes of withholding an award of prejudgment interest.

Prejudgment interest should be awarded from the date of the infringement (see *General Motors* at 655, n.9) and such interest should be calculated based on interest rates *actually charged* plaintiff for short-term borrowing during the applicable periods, compounded monthly. This method is identical to my Opinion determining plaintiff's prejudgment interest award for plaintiff's non-laches mills. *See* Opinion filed December 4, 1989. Plaintiff's exhibit A (attached to its motion for prejudgment interest) reflects the amount of interest actually charged Sun Studs on its short term borrowing for the applicable period. The total interest due as reflected in that exhibit is *$607,137.98*. This amount reflects interest charged from the date of the infringement (July 1974) to July 31, 1990.

The parties are ordered to file with this court within ten (10) days from the date of this opinion an order setting out the amount of interest owed plaintiff in reliance on my findings as set forth above.

On Bill of Costs
(Dec. 12, 1990)

Plaintiff filed its Bill of Costs and defendants filed objections. Plaintiff requests $79,295.50 in general costs, plus $5,186.64 (agreed costs on appeal) and $80,888.04 (expert witness fees). Plaintiff requests a total cost award of *$165,370.18*.

I allow costs in the amount of: *$45,735.69* (allowing $5,186.64 for agreed costs on appeal, disallowing $80,888.04 for expert witness fees and reducing by $28,315.85 plaintiff's general costs).

Recovery of costs is governed by 28 U.S.C. § 1920 which provides that the following costs are recoverable: (1) fees of the clerk and marshal; (2) fees of the court reporter "for all or any part of the stenographic transcript necessarily obtained for use in the case;" (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers "necessarily obtained for use in the case;" (5) docket fees; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and **costs** of special interpretation services under § 18.28 of this title.

*9 Fed.R.Civ.P. 54(d) provides:

> except when express provision therefore is made either in a statute of the United States or in these rules, **costs** shall be allowed as of course to the prevailing party unless the court otherwise directs.

DISCUSSION

1. *Court Reporter Fees*

Plaintiff alleges it is entitled to its share of reporter fees pursuant to § 1920(2). Plaintiff and defendants agreed to **split** the cost of a daily, expedited transcript of the trial. Plaintiff argues that daily transcripts were essential to the case and were used by the parties and the court. Plaintiff also requests **costs** for transcribing the voir dire and motion hearings, which along with the trial transcript, were provided to the Court of Appeals for the Federal Circuit. FRAP 39(e) provides that any **costs** in preparing transcripts for the record on appeal are taxable in District Court.

I will allow plaintiff recovery for all court reporter expenses requested except for that of a daily, expedited trial transcript. *See Thomas v. Duralite Co., Inc.*, 524 F.2d 577, 590 (3rd. Cir.1975) (proper to exclude from costs the charges incurred for daily transcripts when the parties agreed to share the expense for this service). The daily transcript was provided for the lawyer's convenience only, not for the court's use. Plaintiff is entitled to *$14,038.32*.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2. *Copying Costs*

Plaintiff petitions for its copying costs pursuant to 28 U.S.C. § 1920(4). Plaintiff's costs include three copies of plaintiff's exhibits for each phase of the trial (one each for case file, court and defendants), four copies of the depositions read at trial (one each for reader, case file, court and defendants), and the cost of reproducing computer programs provided by the defendant. Plaintiff alleges that the actual cost of copying defendants' computer programs was necessarily incurred because plaintiff had no alternative way to prove copyright infringement because the infringing computer programs were controlled by defendants.

Defendants object only to plaintiff's charge for copies of computer program listings arguing that the copies are either duplicative of the copies of programs made for the court in Phase I or they were not offered into evidence. Defendants assert that the original computer program listings were provided to plaintiff for discovery purposes, and that plaintiff requested copies of those programs from defendants for their own convenience. I agree. The fact that plaintiff obtained its own copy of the programs prior to trial for its experts' use does not qualify it as necessary for use at trial pursuant to § 1920(2). Plaintiff is not entitled to copying costs for these computer programs when they were provided to plaintiff initially for discovery purposes. The copies made by plaintiff were duplicative and made for counsel's convenience. I deny this cost in the amount of $1,386.40.

3. *Witness Fees*

Witness fees are recoverable pursuant to § 1920(3). The claimed fees include attendance fees, mileage, actual travel expenses and statutory subsistence. The attendance fees claimed are for the days each witness actually testified, plus the necessary travel days to and from the trial. *See* 28 U.S.C. § 1821(b). Plaintiff also seeks reimbursement of expenses actually incurred for witnesses, air fare and statutory subsistence. 28 U.S.C. § 1821(c),(d). I allow plaintiff recovery of this cost in the amount of $6,017.80.

4. *Deposition Costs*

***10** Deposition costs are recoverable pursuant to 28 U.S.C. § 1920(4). Plaintiff contends that the cost of depositions read into the record were necessary to its case. I award plaintiff fees for this cost in the amount of $4,405.38.

Plaintiff also seeks reimbursement for the cost of depositions taken by plaintiff of defendant's key employees and witnesses and for copies of depositions taken by defendants of plaintiff's employees and witnesses. Plaintiff alleges that these costs were necessarily incurred to assist plaintiff in preparing these witnesses for cross-examination, rebuttal and to defend against defendants, counterclaims.

I deny recovery for either item. The depositions were discovery depositions and the use of copies of the these depositions for preparation of plaintiff's own witnesses cannot reasonably be characterized as "necessary" pursuant to § 1920. Similarly, plaintiff's claim for copies of depositions offered by defendants and read into the record as part of defendants, case cannot reasonably be characterized as "necessary" to plaintiff's case.

5. *Other Costs*

Plaintiff seeks reimbursement for preparation of charts and graphic exhibits received in evidence at trial ($10,142.50). Plaintiff asserts that these charts were "vital" to plaintiff's case because they permitted the jury to understand "the similarities and differences between plaintiff's and defendants, machines."

I deny recovery of this cost. These exhibits were cumulative of plaintiff's experts' testimony, therefore they are not taxable.

Similarly, plaintiff seeks reimbursement for the costs of production and copying the videotapes of two representative systems which were shown to the jury at trial ($3,224.90). Plaintiff also prepared a short film to show the jury that explained how plaintiff's sawmills and veneer mills operate ($5,000.00).

I deny recovery of these costs. The videotapes and film were shown to the jury during plaintiff's opening statement. Prior to showing the films, I instructed the jury to disregard these films as evidence of infringement or noninfringement on any issues in the case. These costs were not "necessary" to the presentation of plaintiff's case.

Plaintiff also seeks reimbursement for the cost of providing security to the defendants under the initial judgment for an award of contract damages

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

($11,000.00). Plaintiff asserts that defendants insisted, in order for plaintiff to obtain a stay of execution pending appeal, that plaintiff provide an irrevocable letter of credit. I allow plaintiff recovery for this cost in the amount of $11,000.

Finally, plaintiff seeks reimbursement of the cost of converting the trial transcripts into computer readable form (floppy discs) so that indexing could be applied ($305.00). Plaintiff asserts that converting the typed transcripts to floppy discs allowed plaintiff to more efficiently retrieve portions of the transcript both during the trial and during the post-trial period in order to comply with the trial and post-trial briefing schedules.

***11** I deny recovery of this cost. The conversion to computer discs was primarily for counsels, convenience and was not "necessary" to plaintiff's case.

AMENDMENT TO PLAINTIFF'S COST BILL

Plaintiff requests additional costs in the amount of $80,888.04 for expert witness fees in light of, *Eldon Industries Inc. v. Vanier Mfg. Inc.*, --- F.Supp. ----, 14 USPQ2d 1075 (C.D. Cal.1990). The costs of a litigant's expert witnesses are generally not recoverable. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987). However, plaintiff alleges Eldon holds that Crawford is not applicable to patent cases. Crawford held:

> absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 [limiting costs to $30 per day for witnesses] and § 1920....

The rule is, unless a specific statute authorizes taxation of costs, a district court is limited to § 1821 and 1920. Plaintiff argues that *Crawford* is not controlling in this case because the patent statute provides specific authorization. The patent statute, 35 U.S.C. § 284, states:

> upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the UBE made of the invention by the infringer, together with interest and costs as fixed by the court.

Plaintiff asserts that its expert witnesses were essential to its case.

*Eldon* followed the reasoning of *Mathis v. Spears*, 857 F.2d 749 (Fed. Cir.1988), in allowing an award of expert witness fees pursuant to 35 U.S.C. § 285. *Mathis* held:

> *Crawford*, however, confirms the above-stated view that Sections 1920 and 1821 are here inapplicable, for in *Crawford* the Supreme Court held only that [FRCP] 54(d) does not grant federal courts discretion to award witness fees beyond the limitations of 28 U.S.C. § § 1920 and 1821 in routine, nonexceptional case, for which Congress had made no special provision. It did not reach the question of whether awards of attorney fees under statutes specifically providing for such awards may include witness fees beyond the limits of Sections 1920 and 1821.

*Id.* at 758.

Following *Mathis, Eldon* held that expert witness fees could be taxed *as costs fixed by the court* pursuant to 35 U.S.C. § 284. Eldon held:

> In [§ 284] Congress has allowed the court to include 'costs as fixed by the Court' in its assessment of damages. Furthermore, the section's mandate is to 'award [the prevailing] claimant damages adequate to compensate for the infringement.' Part of the damages of infringement are the expenses incurred in litigation necessary to protect the patent rights. Expert witnesses are practically a requirement in patent litigation. Since there is no references to the allowed amounts of § 1821(b), it would appear that Congress has provided for expert fees as costs to not be bound by the $30-per-day limitation. The Court may therefore assess expert fees in excess of the $30 per diem.

***12** *Id.* at 1076.

*Mathis* involved an "exceptional case of vexatious and unwarranted litigation." *Mathis* at 759. In *Mathis*, plaintiff "dragged the seven appellees into court in three suits" which were later consolidated by the district court. *Id.* at 751. Following an eight day bench trial on patent validity and enforceability, the district court cited plaintiff Mathis, inequitable conduct before the Patent and Trademark Office; his discovery abuses; his continuation of the suits on the utility patents when an award of prior art "clearly rendered them invalid;" and his misleading "simulation" at trial of a prior art device." *Id.* The court held that Mathis' "course of conduct demonstrates a recklessness with regard to the truth, which justifies an award of attorneys' fees under the 'exceptional case' provision of 35 U.S.C. § 285." *Id.* The Federal Circuit then stated,

> in the face of the irrefutable evidence of invalidity and unenforceability ..., and with not even a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

> seeming semblance of a sense of shame, Mathis appealed.... Continuing to exhibit a vincible ignorance of reality and a persistent penchant for wasting judicial resources, Mathis filed a [petition for certiorari].... This case illustrates the truism that abuses of the patent system and the judicial process are not limited to infringers. Blatantly misleading the Patent and Trademark Office, Mathis obtained four patents it had to know were invalid. Mathis then wasted the resources of the trial and appellate courts and those of the seven defendants in a charade in which Mathis attempted to employ the courts as handmaidens to its iniquity.
*Id.* 751-52.

*Mathis* determined that it would be inconsistent with the intent of § 285 to limit the defendants (prevailing parties) to something less than the fees and expenses to which it was subjected by Mathis in this 'very exceptional case of gross injustice." *Id.* at 758. *Mathis* concluded by stating that the district court properly awarded the expert fees incurred in this "exceptional case of vexatious and unwarranted litigation." *Id.* at 759.

Similarly, the *Eldon* court found that the defendant willfully infringed on the patents in question and awarded the plaintiff punitive damages by doubling the actual damages figure. *Id.* at 1076.

The facts of the case at bar do not rise to the level of the "vexatious and unwarranted litigation" found in *Mathis,* nor was this case so exceptional that punitive damages were awarded as in *Eldon.* Plaintiff's motion to recover its expert witness fees is denied.

COSTS ON APPEAL

The court received a letter from plaintiff dated November 15, 1990, which stated that the parties agreed to the amount of *$5,186.64* as the amount of costs owed plaintiff for appeal. Plaintiff attached a letter from defense counsel written to plaintiff's counsel which agreed that defendants owe plaintiff that amount for costs on appeal. Therefore, I also award plaintiff the amount of $5,186.64 for appellate costs.

CONCLUSION

***13** Plaintiff is entitled to the following costs:

1. Fees of Clerk--60.00

2. Fees for Service of Summons and Complaint--25.80

3. Fees of Court Reporter--14,038.32 (cost of unexpedited transcript, transcription of voir dire and motion hearings under FRAP 39(e).

4. Fees for Witnesses--6,017.80

5. Fees for Exemplification & Copies--4,876.75 (disallow copies of computer programs).

6. Docket Fees Under 28 U.S.C. § 1923--20.00

7. Costs of Depositions Read Into Record--4,405.38

8. Costs of Depositions Taken by Plaintiff--0.00

9. Costs of Copies of Depositions taken by Defendants--0.00

10. Cost of Filing Notice of Appeal--105.00

11. Preparation of Charts--0.00

12. Costs of Irrevocable Letter of Credit--11,000.00

13. Cost of Producing Two Videotapes Used At Trial--0.00

14. Copies of Two Videotapes--0.00

15. Cost of Producing Film shown to jury--0.00

16. Rental of Movie Projector--0.00

17. Converting Trial Transcripts to Floppy Discs--0.00

18. Agreed Costs on Appeal--5,186.64

19. Expert Witness Fees--0.00

TOTAL COSTS AWARDED: $45,735.69.

Not Reported in F.Supp., 1990 WL 279520 (D.Or.), 17 U.S.P.Q.2d 1763

**Motions, Pleadings and Filings** **(Back to top)**

- 3:78cv00714 (Docket) (Aug. 03, 1978)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.