**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**FOURTH DIVISION**

SUNNY FRESH FOODS, INC.

Plaintiff,

vs.

MICHAEL FOODS, INC. and NORTH CAROLINA STATE UNIVERSITY,

Defendants.

Civil Action No. 00-CV-2117 (JMR/FLN)

# SUNNY FRESH'S RESPONSE IN SUPPORT OF ITS BILL OF COSTS AND REQUEST FOR POST-JUDGMENT INTEREST

September 20, 2005

/s/ William L. Roberts
**FAEGRE & BENSON**
Brian B. O'Neill (Minn. I.D. #82521)
Felicia J. Boyd
William L. Roberts
Lori A. Wagner
Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402-3901
T: 612-766-1650
F: 612-766-1600

**FITCH, EVEN, TABIN & FLANNERY**
Steven C. Schroer (Minn. I.D. #97743)
Timothy E. Levstik
Philip T. Petti
Timothy P. Maloney
120 South LaSalle Street, Suite 1600
Chicago, Illinois 60603-3406
T: 312-577-7000
F: 312-577-7007

Attorneys for Plaintiff

# TABLE OF CONTENTS

**Page**

**INTRODUCTION** ..... 1

**I. DEFENDANTS' ASSERTIONS THAT SUNNY FRESH SHOULD BE DENIED ITS COSTS ARE MERITLESS** ..... 4

**A. The Controlling Federal Circuit Authorities Confirm That Sunny Fresh Was The "Prevailing Party"** ..... 4

**B. Defendants' Assertion That Sunny Fresh Costs Should Be Apportioned By Issue Also Is Meritless** ..... 10

**II. DEFENDANTS' SPECIFIC OBJECTIONS TO SUNNY FRESH'S BILL OF COSTS ARE MERITLESS AS WELL** ..... 13

**A. Sunny Fresh's Bill Of Costs Item IIIA — Transcripts for Pre-Trial Hearings** ..... 14

**B. Sunny Fresh's Bill Of Costs Item IIIB—Trial Transcripts** ..... 14

**C. Sunny Fresh's Bill Of Costs Item IIIC through IIIE—Deposition Testimony Presented At Trial Or Otherwise Necessary** ..... 16

**D. Sunny Fresh's Bill Of Costs Item IV—Witness Fees** ..... 18

**E. Sunny Fresh's Bill Of Costs Item VI—Fees For Exemplification And Copies Of Papers** ..... 19

**1. Trial Exhibits Regarding Price Erosion Damages By NERA** ..... 20

**2. Preparation And Production Of Demonstrative Exhibits, Graphical Exhibits, and Computer Animation** ..... 21

**3. Preparation And Presentation Of Video Depositions (Item VI.B to Sunny Fresh's Bill of Costs)** ..... 23

**4. Preparation And Presentation Of Trial Exhibits And Video Depositions (Item VI.C to Sunny Fresh's Bill of Costs)** ..... 24

**CONCLUSION** .......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Allen & O'Hara, Inc. v. Barrett Wrecking, Inc.*,
898 F.2d 512 (7th Cir. 1990) ........................................ 9

*Amarel v. Connell*,
102 F.3d 1494, (9th Cir. 1996) ........................................ 9

*Arrowhead Indust. Water, Inc. v. Ecolochem, Inc.*,
846 F.2d 731 (Fed. Cir. 1988) ........................................ 5

*B. Braun Med., Inc. v. Abbott Lab.*,
38 F. Supp. 2d 393 (E.D. Pa. 1999) ........................................ 9

*Biodex Corp. v. Loredan Biomed., Inc.*,
946 F.2d 850 (Fed. Cir. 1991) ........................................ 15

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*,
393 F.3d 1378 (Fed. Cir. 2005) ........................................ 8

*Cefalu v. Vill. of Elk Grove*,
211 F.3d 416 (7th Cir. 2000) ........................................ 20, 22, 23, 25

*Clem Environmental Corp. v. American Colloid Co.*,
No. 90 C 0639 1991 U.S. Dist. LEXIS 16628 (N.D. Ill. Nov. 12, 1991) ........................................ 11

*Collegenet, Inc. v. Applyyourself, Inc.*,
Nos. CV-02-484-HU, CV-02-1359-HU, 2004 WL 2050488 (D. Or. Feb. 10, 2004)...... 9

*Compro-Frink Co. v. Valk Mfg. Co.*,
595 F.Supp. 302 (E.D. Pa. 1982) ........................................ 9

*Concord Boat Corp. v. Brunswick Corp.*,
309 F.3d 494 (8th Cir. 2002) ........................................ 2, 10, 13

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*,
482 U.S. 437 (1987) ........................................ 13, 21

*Gentry Gallery, Inc. v. Berkline Corp.*,
134 F.3d 1473 (Fed. Cir. 1998) ........................................ 8

*Glenayre Elecs., Inc., v. Jackson*,
No. 02 C 0256 2003 WL 21947112, at *4 (N.D. Ill. Aug. 11, 2003) ........................ 22

*Goodwall Constr. Co. v. Beers Const. Co.*,
824 F. Supp. 1044 (N.D. Ga. 1992) ........................................ 14

*Goss Int'l Corp. v. Tokyo Kikai Seisakusho, Ltd.*,
2004 U.S. Dist. LEXIS 10164 (N. Dist. Iowa June 2, 2004) ........................ 25

*Hensley v. Eckerhart*, 461 US 424, (1983) ........................................ 8

*Howell Petroleum Corp v. Samson Res. Co.*,
903 F.2d 778 (10th Cir. 1990) ........................................ 10

*Inamed Corp. v. Kuzmak*,
249 F.3d 1356 (Fed. Cir. 2001) ........................................ 6

*Inland Steel Co. v. LTV Steel Co.*,
364 F.3d 1318 (Fed. Cir. 2004) ........................................ 7

*J.L. Owens Co. v. Twin City Separator Co.*,
168 F. 259 (8th Cir. 1909) ........................................ 10

*Johnson v. Nordstrom-Larpenteur Agency, Inc.*,
623 F.2d 1279 (8th Cir. 1980) ........................................ 9

*Kohus v. Cosco, Inc.*,
282 F.3d 1355 (Fed. Cir. 2002) ........................................ 21

*Kropp v. Ziebarth*,
601 F.2d 1348 (8th Cir. 1979) ........................................ 9

*Livescan Inc. v. Home Diagnostics, Inc.*,
No. 96-597-JJF 2001 U.S. Dist. LEXIS 22311 (D. Del. 2001) ........................ 9

*Manildra Milling Corp. v. Ogilvie Mills, Inc.*,
76 F.3d 1178 (Fed. Cir. 1996) ........................................ 6, 16, 20, 23

*McGill v Faulkner*,
18 F.3d 456 (7th Cir. 1994) .......... 10

*McGuire v. Davidson Mfg. Corp.*,
258 F.Supp. 2d 945 (N. D. Iowa 2003) .......... 10, 16, 18

*Medtronic, Inc. v. Adv. Cardiovascular Sys., Inc.*
Civ. No. 97-2459 (JMR/FLN) .......... passim

*Medtronic, Inc. v. Adv. Cardiovascular Sys., Inc.*,
182 F. Supp. 2d 810 (D. Minn. 2000), *aff'd* 248 F.3d 1303 (Fed. Cir. 2001) .......... 11

*Meredith v. Schreiner Transp.*, Inc.,
814 F. Supp. 1004 (D. Kan. 1993) .......... 17

*Morrison v. Reichhold Chem., Inc.*,
97 F.3d 460 (11th Cir. 1996) .......... 17

*Richmond v. Southwire Co.*,
980 F.2d 518 (8th Cir. 1992) .......... 9

*Ryther v. KARE* 11,
864 F. Supp. 1525 (D. Minn. 1994) .......... 16

*Senior Technologies, Inc. v. R.F. Technologies, Inc.*,
190 F.R.D. 642 (D. Neb. 2000) .......... 9

*Sheehy v. Town of Plymouth*,
No. Civ. A. 95-12425-RBC,2001 WL 92386 (D. Mass. Jan. 18, 2001) .......... 11

*Slagenweit v. Slagenweit*,
63 F.3d 719 (8th Cir. 1995) .......... 16

*Spalding & Evenflo Cos., Inc. v. Graco Metal Prods.*, Inc.,
No. 5:90 CV 0651 1992 WL 109092 (N.D. Ohio Feb. 14, 1992) .......... 18

*Srybnik v. Epstein*,
230 F.2d 683 (2nd Cir. 1956) .......... 9

*Tilton v. Capital Cities*,
115 F.3d 1471 (10th Cir. 1997) .......... 17

*Tunison v. Cont'l Airlines Corp.*,
162 F.3d 1187 (D.C. Cir. 1998) .......... 10

*Vornado Air Circulation v. Duracraft Corp. Sys., Inc.*,
No. 92-1543-WEB, 1995 WL 794070, at *3 (D. Kan. Nov. 29, 1995) .......... 22

*West Virginia University Hospitals, Inc. v. Casey*,
499 U.S. 83, in St. Ct. 1138 (1991) .......... 13

*Zotos v. Lindberg Sch. Dist.*,
121 F.3d 356 (8th Cir. 1997) .......... 16, 24

**Statutes**

28 U.S.C. § 1821(c)(1) .......... 13, 18
28 U.S.C. § 1821(d) .......... 19
28 U.S.C. § 1920 .......... passim
28 U.S.C. § 1920(2) .......... 14

**Other Authorities**

Fed.R.Civ.P. 30(b)(6) .......... 18
Fed.R.Civ.P. 54(d) .......... 1, 21
Fed.R.Evid. 611(a)(2) .......... 24

## INTRODUCTION

Defendants' objections to Sunny Fresh's Bill of Costs simply ignore the controlling Federal Circuit and Eighth Circuit authorities, as well as this Court's decision in a virtually identical case, *Medtronic, Inc. v. Adv. Cardiovascular Sys., Inc.* Civ. No. 97-2459 (JMR/FLN) ("*Medtronic*"). One must assume that Defendants fail to address *Medtronic* because there is no principled basis on which to distinguish it. That Defendants attempt to twist their loss at trial on Sunny Fresh's claim for a declaration of non-infringement, and on every one of their five counterclaims, into an alleged "draw" is emblematic of all of their objections.

The jury found in Sunny Fresh's favor, resulting in a declaratory judgment that Sunny Fresh did not infringe any of the 39 asserted claims of the four patents in suit, and thus denied Defendants' damages contentions of approximately ***$180 million*** (which Defendants' asserted should be trebled to exceed **$500 million**). Moreover, each of Defendants' contract, fraud, and unfair competition counterclaims allegedly permitting Defendants to claim additional damages of the same magnitude (*i.e.*, over $500 million) were rejected on summary judgment. [Dkt. No. 152].

Thus, there can be no serious question that Sunny Fresh is the "prevailing party" in this case under Fed.R.Civ.P. 54(d) and 28 U.S.C. § 1920. The Federal Circuit's affirmance of the judgment in this case based solely on the jury's infringement finding is conclusive on this issue. (Ex. B hereto). Contrary to Defendants' allegations, Sunny Fresh was not required to also prevail on its alternative invalidity and unenforceability

declaratory judgment claims - - the non-infringement verdict completely exonerated Sunny Fresh's accused processes and products.[1/]

Furthermore, ***Defendants*** bear the burden of overcoming the presumption that Sunny Fresh is entitled to the ***full*** measure of its costs. *See, e.g., Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494, 498 (8th Cir. 2002). Indeed, "[t]he losing party bears the burden of making a showing that an award is inequitable under the circumstances." *Id.*

Sunny Fresh provided a detailed declaration, a comprehensive spreadsheet summarizing its costs and the basis for its costs, and over 212 exhibits providing invoices or other support for the Bill of Costs. (BOC Ex. 1 [Dkt. No. 384] Ex. 1).[2/] Defendants, however, offer ***no*** record citations, orders of this court, affidavits, or declarations of their own to support their objections. Defendants further fail to provide the Court with any of the specific information necessary to evaluate the merit of Defendants' allegations that certain of Sunny Fresh's costs should be denied as improper or should be denied under Defendants' (improper) apportionment theory.

As stated in Sunny Fresh's Resubmission of Bill of Costs and Request for Post-Judgment Interest, Sunny Fresh's Bill of Costs carefully follows the Court's guidance from *Medtronic*. Defendants do not address the Court's decision in *Medtronic* in ***any***

---

[1/] The Federal Circuit, in fact, found it unnecessary to address Sunny Fresh's other conditional appeal of the jury's findings on the validity and enforceability issues. (Ex. B at 10, declining to address conditional cross appeal of validity issue as "moot").

[2/] Reference to Sunny Fresh's exhibits to its Bill of Costs [Dkt. No. 384], filed conventionally, will be denoted by "BOC Ex. ___." BOC Ex. 1 contains a detailed summary of the requested costs, which the Court may find useful.

respect, and, in fact, repeat many of the arguments which Judge Noel and Judge Rosenbaum explicitly rejected in *Medtronic*.[3/]

The issues in this case concern four patents and over 39 patent claims. The issues presented to the jury were complex and overlapping, and required the testimony of 44 witnesses and the admission of hundreds of exhibits, including approximately 30 boxes of prosecution histories of the patents in suit. Moreover, the case stretched over more than 14 years, and resulted in a trial that extended over a period of six weeks. Sunny Fresh respectfully requests that its Bill of Costs be granted. The amounts requested are extremely reasonable, given the size and complexity of the case, even more daunting than *Medtronic*.

Defendants do not contest that Sunny Fresh is entitled to post-judgment interest on the award of costs. Therefore, Sunny Fresh also requests the addition of its interest to the costs award. For the Court's convenience, a chart summarizing Sunny Fresh's requested costs and Defendants' contentions is attached hereto as Exhibit A.

Defendants concede, as they must, that this Court has the power to grant all of the costs requested by Sunny Fresh. None of the arguments raised or cases cited by Defendants justify reducing the cost award as a discretionary matter.

---

[3/] Relevant orders and briefing on the award of costs from the *Medtronic* case are attached hereto as Exs. C – G.

## ARGUMENT

### I. DEFENDANTS' ASSERTIONS THAT SUNNY FRESH SHOULD BE DENIED ITS COSTS ARE MERITLESS

Defendants' contention that Sunny Fresh was not the "prevailing party" in this case is absurd, and, in the first instance, rests on a fundamental mischaracterization of Sunny Fresh's claims and Defendants' counterclaims. Defendants further ignore the recent and controlling Federal Circuit authority confirming that Sunny Fresh is, in fact, the "prevailing party." Similarly, Defendants do not provide any legitimate reason for this Court to require that the parties bear their own costs or to apportion Sunny Fresh's costs by issue.

In the *Medtronic* case, this Court reached the proper conclusion on this issue, awarding over $475,000 in costs to the defendants (the alleged infringers) who established that they were entitled to a JMOL of non-infringement after the close of evidence and before the case went to the jury. As here, the patents in *Medtronic* remained valid and enforceable, as the invalidity defenses there were rendered moot in view of the non-infringement judgment, but the defendants were allowed costs having prevailed on non-infringement.

#### A. The Controlling Federal Circuit Authorities Confirm That Sunny Fresh Was The "Prevailing Party"

Sunny Fresh brought this case in 1992, seeking a declaration that its accused process and products ***did not infringe*** the four patents in suit. Sunny Fresh also alleged alternative theories for finding that Sunny Fresh was not liable under the patents, *i.e.*

Sunny Fresh's claims for a declaration that the patents were invalid and/or unenforceable. Despite Defendants' mischaracterization (DO at 2),[4/] this was ***not*** a case where Defendants asserted a claim for infringement and Sunny Fresh brought affirmative defenses of invalidity and unenforceability.

When the litigation was resumed in September 2000, after it was effectively stayed for five years, Sunny Fresh led its patent causes with a claim for a declaration of non-infringement.[5/] [*See* Dkt. No. 1, p. 8]. As Sunny Fresh explained in its opening statement at trial:

> This is a dispute that has been festering since about 1989. Fourteen years now. This is in fact the second lawsuit between the parties … Sunny Fresh brought this lawsuit … as it did the first case, and it did so to vindicate its right to do what it has been doing; that is, to make some egg products that you'll be hearing about, to sell those to its customers, and equally importantly for Sunny Fresh's customers, then, to be able to sell, to use and sell those products. [Dkt. No. 337 at 35-36].

Thus, Sunny Fresh brought this case to avoid "the sad and saddening scenario that led to the enactment of the Declaratory Judgment Act." *Arrowhead Indust. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 734 (Fed. Cir. 1988). As the Federal Circuit explained, a

---

[4/] Michael Foods, Inc. and North Carolina State University's Opposition to Sunny Fresh Foods, Inc.'s Bill of Costs, [Dkt. No. 386] is referred to herein as "DO at ___."

[5/] As Defendants' acknowledged (DO at 2), Sunny Fresh's first case (and Defendants' counterclaims) were dismissed without prejudice in 1995 pursuant to a Settlement Agreement between the parties, effectively staying the case while Defendants' patents were subject to reexamination and reissue proceedings in the Patent and Trademark Office. When Sunny Fresh refiled its Complaint in September 2000, Sunny Fresh's first cause of action concerned the interpretation of the Settlement Agreement [*See* Dkt. No. 1].

patent declaratory judgment action necessarily seeks an affirmative change in the legal relationship between the parties:

> In the patent version of that scenario, a patent owner engages in a *danse macabre*, brandishing a Damoclean threat with a sheathed sword....Guerrilla-like, the patent owner attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurities.... Before the Act, competitors victimized by that tactic were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue. After the Act, those competitors were no longer restricted to an *in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests.

*Id.* at 734-735*; accord Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1362 (Fed. Cir. 2001).

The Federal Circuit's controlling authority, *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1182 (Fed. Cir. 1996), holds that a party "'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties…" Notwithstanding Defendants' assertions to the contrary, (DO at 4-6), the jury's verdict of non-infringement ***did***, in fact, inalterably and materially change the legal relationship between Sunny Fresh and Defendants.

Sunny Fresh accomplished its fundamental goal in bringing this case – to clear its processes and products, and the customers that buy and use them, of the threat created by Defendants' *in terrorem* infringement allegations.[6/] Defendants now are barred by both

[6/] Indeed, Defendants acknowledge (DO at 1-2), that until the jury found in Sunny Fresh's favor, Defendants had intimidated every other egg processor with their patents, aggressive litigation tactics, and licensing demands.

the doctrines of *res judicata* and collateral estoppel from ever again asserting the four patents in suit against the processes and products that Sunny Fresh uses today or has used since the early 1990's. Sunny Fresh and its customers no longer labor under the uncertainty and insecurities that they endured for over fourteen years.

Sunny Fresh also prevailed on ***every one*** of Defendants' five counterclaims alleging patent infringement, breach of a duty of good faith, breach of the parties' Settlement Agreement that effectively stayed the case between November 1995 and September 2000, and unfair competition under North Carolina state law.[7/] [*See* Dkt. No. 152]. Thus, Sunny Fresh prevailed on every issue material to alleged liability to Defendants.

Thus, there can be no serious question that Sunny Fresh is the prevailing party under *Manildra*: "[b]y removing the potential threat of the patentee instituting an infringement action, the competitor necessarily alters the patentee's subsequent behavior to his benefit." 76 F.3d at 1183. Indeed, Defendants do not address, and cannot distinguish, the similar holding in *Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir. 2004): "[a]n indication of [the accused infringer's] status as a prevailing party is that the judgment it obtained in this case would have *res judicata* effect as to any claim brought against [the alleged infringer] in the future with respect to the patent claims that were at issue in the district court case."

---

[7/] Sunny Fresh is not seeking its costs for its defense of Defendants contract and unfair competition counterclaims.

Defendants also do not attempt to distinguish the very recent decision in *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1380-81 (Fed. Cir. 2005), rejecting almost identical allegations by a patent owner. In that case, the Federal Circuit held that the declaratory judgment plaintiff, Brooks, was the "prevailing party" when Brooks (like Sunny Fresh) established that it did not infringe the patent there in suit. *Id.* at 1381. The Federal Circuit expressly firmly rejected the patent owner's arguments, like Defendants' here, that Brooks could not be the prevailing party because it lost on other issues. *Id.* ***"That other defenses, such as invalidity of the patent, were unsuccessful or withdrawn, does not change the outcome in Brooks' favor."*** *Id.* (emphasis added).

The Federal Circuit expressly held that "[d]etermination of the prevailing party is based on the relation of the litigation result to the overall objective of litigation, and not on a count of the number of claims and defenses." *Id.* Defendants also fail to address other controlling Federal Circuit authority holding that a party is the "prevailing party" if it ***"succeed[s] on any significant issue*** in litigation which achieves some of the benefit the parties sought in bringing the suit." *E.g., Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1480 (Fed. Cir. 1998) (citing *Hensley v. Eckerhart*, 461 US 424, 433 & n.7 (1983) (emphasis supplied).

The cases cited by Defendants certainly do not justify a conclusion that Sunny Fresh's success before this Court and on appeal can be considered a "draw" requiring the denial of Sunny Fresh's costs. The district courts in those cases - - none of which is binding authority in this district - - did not have the benefit of the Federal Circuit's recent

cases discussed above applying the *Manildra* standards, nor did they involve a declaratory judgment plaintiff, like Sunny Fresh, that successfully cleared its products of patent infringement claims and won on every other cause of action asserted by the patent owner. *See e.g., Collegenet, Inc. v. Applyyourself, Inc.*, Nos. CV-02-484-HU, CV-02-1359-HU, 2004 WL 2050488 (D. Or. Feb. 10, 2004); *B. Braun Med., Inc. v. Abbott Lab.*, 38 F. Supp. 2d 393, 395 (E.D. Pa. 1999); *Compro-Frink Co. v. Valk Mfg. Co.*, 595 F.Supp. 302, 303 (E.D. Pa. 1982).[8/]

Defendants' reliance on other non-patent cases also is misplaced. None of those cases involved a successful declaratory judgment plaintiff, like Sunny Fresh, but rather involved a district court decision that was reversed on appeal, a case where both parties won damages from the other, a claim for attorneys' fees (which is not at issue here), a claim for costs that far exceeded the nominal damages at issue (which is not the case here), or cases where neither party was successful on its claims. *See, e.g., Amarel v. Connell*, 102 F.3d 1494, 1523 (9th Cir. 1996); *Richmond v. Southwire Co.*, 980 F.2d 518, 520 (8th Cir. 1992); *Johnson v. Nordstrom-Larpenteur Agency, Inc.*, 623 F.2d 1279, 1280 (8th Cir. 1980); *Kropp v. Ziebarth*, 601 F.2d 1348, 1352 (8th Cir. 1979); *Srybnik v. Epstein*, 230 F.2d 683, 685 (2nd Cir. 1956).[9/]

---

[8/] The district courts in other cases cited by Defendants, *Senior Technologies, Inc. v. R.F. Technologies, Inc.*, 190 F.R.D. 642, 644 (D. Neb. 2000) and *Livescan Inc. v. Home Diagnostics, Inc.*, No. 96-597-JJF 2001 U.S. Dist. LEXIS 22311 (D. Del. Oct. 30 2001), rely on the *Compro-Frink* case, but do not acknowledge that the *Compro-Frink* case denied costs due to the parties' mutual failure to establish their damages claims. There was no such mutual failure in this case.

[9/] The other cases Defendants cite are also inapplicable for similar reasons. *See Allen & O'Hara, Inc. v. Barrett Wrecking, Inc.*, 898 F.2d 512, 515 (7th Cir. 1990); *Howell Petroleum Corp v.*

### B. Defendants' Assertion That Sunny Fresh Costs Should Be Apportioned By Issue Also Is Meritless

Defendants' assertion that the Court should attempt to apportion Sunny Fresh's costs by issue is equally unsupportable. It is ***Defendants'*** burden to prove that Sunny Fresh's cost requests are inequitable under the circumstances. *See, e.g,. Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494, 498 (8th Cir. 2002); *McGill v Faulkner*, 18 F.3d 456, 459 (7th Cir. 1994); *McGuire v. Davidson Mfg. Corp.*, 258 F.Supp. 2d 945, 948 (N. D. Iowa 2003).

As the Eighth Circuit explained in *Concord* when it reversed the district court's denial of certain costs and ordered taxation of over $1 million in costs:

> When an expense is taxable as a cost, however, there is a strong presumption that a prevailing party shall recover it "in full measure".... The 'losing party bears the burden of making the showing that an award is inequitable under the circumstances."

309 F.3d at 498. Indeed, the Eighth Circuit criticized the district court for failing to hold the losing party to that burden of proof. *Id.* Defendants cannot, as they attempt to do here, shift the burden on the cost issue to Sunny Fresh. *Id.; see also McGuire*, 258 F. Supp. 2d at 948.

Defendants do not acknowledge their burden of proof, instead citing to the century-old case of *J.L. Owens Co. v. Twin City Separator Co.*, 168 F. 259, 270 (8th Cir. 1909), to justify their apportionment allegations. In that case (if it is still viable precedent today), unlike this one, the patent owner established infringement of only two of the three

---

*Samson Res. Co.*, 903 F.2d 778, 783 (10th Cir. 1990); *Tunison v. Cont'l Airlines Corp.*, 162 F.3d 1187, 1189-90 (D.C. Cir. 1998)..

patents at issue. *Id.* Thus, the court apportioned the patent owner's costs *by patent*. Sunny Fresh, in contrast, established that it did not infringe ***any*** of the four patents in suit.

Defendants also cite to the unpublished decision *Sheehy v. Town of Plymouth*, No. Civ. A. 95-12425-RBC, 2001 WL 92386 (D. Mass. Jan. 18, 2001), where the court apportioned costs by cause of action. In that case, the court found that the plaintiff won nominal damages and thus it was inequitable to require the defendant to cover "all costs simply for losing on one small claim." *Id.* at *6. Defendants did not lose on "one small claim" as asserted by Sunny Fresh. Defendants lost the entirety of an infringement claim, which they asserted was worth over ***$500 million***, as well as on every one of Defendants' other counterclaims, which also were purportedly worth hundreds of millions of dollars.[10]

In *Medtronic*, this Court did not engage in such parsing of costs, even though the case was decided on the issue of infringement, not the validity or enforceability of the patent there in suit. *See Medtronic, Inc. v. Adv. Cardiovascular Sys., Inc.*, 182 F. Supp. 2d 810, 811-12 (D. Minn. 2000), *aff'd* 248 F.3d 1303 (Fed. Cir. 2001).[11/]

Even if the Court were to entertain such a proposition, Defendants do not come forward with ***any*** of the record citations, rulings of this Court, affidavits of counsel, or other evidence necessary to support any specific apportionment allegations. Defendants,

[10/] Defendants alleged that their counterclaims allowed them to seek patent infringement damages for the five year period from November 1995 to September 2000, which were otherwise barred by the Settlement Agreement between the parties.

[11/] Defendants' reliance on the unpublished decision in *Clem Environmental Corp. v. American Colloid Co.*, No. 90 C 0639 1991 U.S. Dist. LEXIS 16628 (N.D. Ill. Nov. 12, 1991) also is misplaced. In that case, the court apportioned costs because the alleged defendant, unlike Sunny Fresh, went beyond denial of liability under the patents there in suit to unsuccessfully seek a declaration that it was the owner of the patent. *Id.* at *8.

for example, make broad generalizations regarding various witnesses and much of the trial record, but do not cite to any specific testimony or any specific exhibits to satisfy their burden to establish that it would be inequitable to award the costs that Sunny Fresh requests. Defendants do not do so because the evidence supporting Sunny Fresh's successful non-infringement declaratory judgment claim significantly overlapped the evidence on Sunny Fresh's other claims.

For example, from the outset of the trial, Sunny Fresh explained that it was practicing processes and producing products that were well known in the public domain prior art. Sunny Fresh relied on the same prior art for its invalidity defense. (*See e.g.*, [Dkt. No. 337 at 37, 40]. Sunny Fresh also expressly relied on the prosecution histories of the patents that caused the Defendants to narrow their patent claims, confirming that Sunny Fresh did not infringe and supporting Sunny Fresh's unenforceability defenses. [See Dkt. No. 337 at 41-42].

Sunny Fresh's closing statement followed the path charted in Sunny Fresh's opening: "What this case is really about is this: Sunny Fresh practices the prior art." [Dkt. No. 351 at 2568]. As Sunny Fresh explained, this fundamental fact confirmed and supported the expert and other evidence establishing that Sunny Fresh's process and product could not satisfy the "equivalent point/5% SPL (Batch) line," "aseptic packaging," and "shelf life" limitations required by each of Defendants' asserted patent claims. (Ex. B herewith).

Thus, Defendants utterly fail to justify or support their apportionment theory. There is no basis to deny any of Sunny Fresh's requested costs based on Defendants' unsupported characterizations as "invalidity" and "enforceability" evidence.

## II. DEFENDANTS' SPECIFIC OBJECTIONS TO SUNNY FRESH'S BILL OF COSTS ARE MERITLESS AS WELL

Defendants object to nearly every item on Sunny Fresh's Bill of Costs, asserting that the costs are not taxable under 28 U.S.C. § 1920, again without any of the evidence or record support necessary to meet their burden of proof on those objections. *E.g., Concord,* 309 F.3d at 498. Defendants instead rely on two cases, *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 S.Ct. 2494 (1987) and *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83 (1991). Those decisions stand merely for the general and unremarkable proposition that courts will only tax those costs that are authorized under the general categories of §1920 or §1821. Here there can be no dispute that the categories of costs requested by Sunny Fresh may be allowed, as they were in *Medtronic*.

Defendants also repeatedly cite to the Clerks Office's guide, "Taxation Of Costs In A Civil Case In The United States District Court For The District Of Minnesota" ("Guidelines"). The Guidelines explicitly state that they should ***not*** "be cited as legal authority." (Ex. I herewith). Thus, Defendants provide no support for most of their objections, and where they do cite specific cases, those decisions do not address Defendants actual objections. As with their general objections discussed *supra*, Defendants specific objections simply ignore the guidance provided by this Court's

*Medtronic* case, which Sunny Fresh expressly followed in preparing its Bill of Costs. Each of Defendants' specific objections is treated below.

**A. Sunny Fresh's Bill Of Costs Item IIIA — Transcripts for Pre-Trial Hearings**

Defendants' objection to Sunny Fresh's request for $1,811.61 for copies of pretrial transcripts is meritless. Contrary to Defendants' assertions, (DO at 12-13), Sunny Fresh is entitled to its costs for all transcripts necessary for use in the ***case***, not merely those transcripts used at trial. This Court has granted such costs for pretrial hearing transcripts in *Medtronic*. (Ex. E at p. 3 and Ex. G at p. 1, submitted herewith). As Sunny Fresh explained in Mr. Petti's declaration supporting the Bill of Costs, the transcripts were "necessarily obtained for use in the case" under 28 U.S.C. § 1920(2), for discovery and for dispositive motions. [Dkt. No. 381, pp. 9-12]. Defendants do not attempt to satisfy their burden of proving that the award of costs for those transcripts would be inequitable.

**B. Sunny Fresh's Bill Of Costs Item IIIB—Trial Transcripts**

Defendants argue (DO at 13-14) that Sunny Fresh should not recover costs for trial transcripts. Defendants rely entirely on *Goodwall Constr. Co. v. Beers Const. Co.*, 824 F. Supp. 1044, 1064-65 (N.D. Ga. 1992), arguing that ordering transcripts for JMOL motions is insufficient to justify a cost award. That case, however, is hardly controlling authority, does not itself cite any authority for denying trial transcript costs, and, based on Sunny Fresh's research, has not been followed by any other court. Indeed, this Court taxed costs for trial transcripts in the *Medtronic* case. (Ex. G at p. 1, submitted herewith).

Sunny Fresh was required to order daily transcripts for this case in view of the very complex nature of the case and the evidence. Defendants are hardly in a position to contest this, because they also ordered and used the daily transcripts. Moreover, the case stretched over six weeks with numerous and lengthy breaks (one of which was for 10 days). Thus, Sunny Fresh required the transcripts to prepare ***during*** the trial, as well as for the post-trial motions.

In view of damages at issue in this case, it certainly would have been unreasonable to expect Sunny Fresh to prepare its post-trial motions and respond to Defendants' post-trial motions without the benefit of those transcripts. *See Biodex Corp. v. Loredan Biomed., Inc.*, 946 F.2d 850, 854 (Fed. Cir. 1991). Sunny Fresh extensively cited to the trial transcripts in its post trial motions and in opposing Defendants' motions. [Dkt. Nos. 306-314, 319-320 (Sunny Fresh's Motions for JMOL); Dkt. Nos. 321-324 (Oppositions to Defendants' motions for JMOL). Indeed, Defendants submitted several groundless motions for JMOL asserting that Sunny Fresh failed to present evidence on a number of issues, requiring Sunny Fresh to quote extensively from the trial transcripts. [*See e.g.* Dkt. Nos. 288-292 and Sunny Fresh's opposition briefs at Dkt. Nos. 321-324]. Thus, Defendants have no legitimate objection to these costs.

Defendants also object to the costs requested for two copies of the daily transcripts and real time transcription. (DO at 14). Given the complexity and length of the case, the extra transcript copies and real-time transcription were necessary to expedite the trial and

were frequently used by both sides and the Court to address evidentiary matters during trial and for the cross-examination of witnesses.

Sunny Fresh's request for the full amount of $22,335.44 should be taxed. Alternatively, should the Court determine that only the cost of the original paper copy of the trial transcript should be taxed, then Sunny Fresh should be awarded $8,840.70.

**C. Sunny Fresh's Bill Of Costs Item IIIC through IIIE—Deposition Testimony Presented At Trial Or Otherwise Necessary**

Defendants' assertion that 28 U.S.C. § 1920 limits taxation of costs to those transcripts actually admitted at trial is simply not true. This Court properly rejected that argument in the *Medtronic* case, where costs were taxed for the depositions of witnesses on the witness list (Ex. D at 4-6; Ex. G at 1). The relevant authorities consistently hold that the deposition transcripts "necessarily obtained for use in the case" need only be necessary "at the time they were taken," particularly where "the deponents were potential trial witnesses." *See, e.g., Manildra*, 76 F.3d at 1184-85; *Zotos v. Lindbergh Sch. District*, 121 F.3d 356, 363-64 (8th Cir. 1997) (costs awarded for deposition transcripts of deponents who had been listed as trial witnesses); *Ryther v. KARE* 11, 864 F. Supp. 1525, 1534 (D. Minn. 1994) (cost of deposition transcript not used at trial "may still be taxable when the deposition appeared reasonably necessary to the parties at the time it was taken."); *Slagenweit v. Slagenweit*, 63 F.3d 719, 721 (8th Cir. 1995) (deposition not introduced at trial was properly taxed as cost because the deposition was neither "purely investigative" nor obtained "for reasons other than trial preparation."); *McGuire*, 258 F. Supp. 2d at 948-9 (taxing costs for deposition of witnesses who did not testify at trial).

As discussed in the Petti Declaration [Dkt. No. 381 at 8-12] and BOC Ex. 1 [Dkt. No. 384], the deposition costs requested by Sunny Fresh were for potential trial witnesses listed by at least one party, and also were necessary for the preparation of this case. (Ex. M hereto). The fact that these witnesses were scheduled as potential trial witnesses conclusively establishes that they were ***not*** for "purely investigative purposes." Moreover, Defendants do not dispute that the 19 depositions that they (incorrectly) allege were "for the convenience of counsel" most certainly were reasonably necessary when they were taken. (DO at 16-4). Those witnesses actually did testify at trial or had their deposition testimony designated by the parties. [Dkt. No. 381 at 9-12]. As discussed *supra*, Defendants' further contention that Sunny Fresh's costs should be apportioned to deny Sunny Fresh's costs for the depositions of alleged "validity" or "enforceability" witnesses is without any legal or record support whatsoever.[12/] (DO at p. 15).

Defendants' contention that Sunny Fresh should not be permitted its costs for both video depositions and stenographic transcripts is similarly meritless. There is ample authority supporting the award of costs for both paper and video transcripts. *E.g., Tilton v. Capital Cities*, 115 F.3d 1471, 1478 (10th Cir. 1997); *Morrison v. Reichhold Chem., Inc.*, 97 F.3d 460, 465 (11th Cir. 1996); *Meredith v. Schreiner Transp.*, Inc., 814 F. Supp. 1004, 1006 (D. Kan. 1993). Furthermore, many of the video transcripts were synchronized to the stenographic transcript for the benefit of the Court and jury, and

[12/] Witnesses that Defendants assert were presented for the issue of "validity" also gave testimony relevant to non-infringement. For instance, Roger Glasshoff testified as to standards for aseptic packaging, which was highly relevant to the issue of non-infringement. Likewise, Howard Magwire testified as to USDA standards and basics of pasteurization, and Mohammad Samimi testified as to the limitations of the patent in suit.

played at trial in lieu of live testimony or summaries. Indeed, this Court rejected Defendants' very argument in *Medtronic*, where this court taxed the cost of both stenographic transcripts and deposition videos in the amount of $68,978.37. (Ex. G, p. 1; Ex. F, p. 4).

**D. Sunny Fresh's Bill Of Costs Item IV—Witness Fees**

Defendants' objection to Sunny Fresh's request for the costs in the amount of $120 incurred for its employees, Dr. Scott Woodward and Michael Luker, to testify at trial is similarly specious, and hardly worth mentioning. The case cited by Defendants, *Spalding & Evenflo Cos., Inc. v. Graco Metal Prod.,* Inc., No. 5:90 CV 0651 1992 WL 109092 (N.D. Ohio Feb. 14, 1992), denied costs for witnesses appearing to testify under Fed.R.Civ.P. 30(b)(6), as corporate representatives on designated issues.

Neither Mr. Luker (Sunny Fresh's President) nor Dr. Woodward appeared under Rule 30(b)(6). Both individuals testified at trial in their personal capacities as fact witnesses. Dr. Woodward, in fact, also was called as an adverse witness by Defendants. Defendants do not contest the statutory witness fees for the other witnesses.

Defendants also cannot support their assertion that taxation of Sunny Fresh's costs of $9,580.22 would be inequitable because the Clerk may tax only up to a maximum of $81.00 ($0.0405 per mile for up to 100 miles) for the appearance of Sunny Fresh's witnesses. Defendants ignore the express provision under 28 U.S.C. §§ 1821(c)(1) and 1920 for recovery of "actual expenses of travel," including air fare, for witnesses who attend trial. *McGuire,* 258 F. Supp. 2d at 949. The Clerk may also tax $160 per day if an

overnight stay is required in Minneapolis. 28 U.S.C. § 1821(d) and Form AO 133. Defendants do not even attempt to show that these costs are inequitable.

Defendants also assert that there can be no taxation of costs for witnesses who testified to invalidity or unenforceability. (DO at 19-20). As discussed *supra*, there is no such rule, and this Court may tax such costs. In fact, in *Medtronic*, this Court made no distinction in taxing costs between those who testified regarding non-infringement and those who testified regarding invalidity. (Ex. G).

**E. Sunny Fresh's Bill Of Costs Item VI—Fees For Exemplification And Copies Of Papers**

Michael Foods broadly asserts that all items relating to exemplification and copies of papers are "not proper costs under 28 U.S.C. § 1920," with the exception of $29,164.60 for certified copies of file histories, which they do not dispute. However, Michael Foods offers no justification for their broad assertion. In fact, the same arguments were made in *Medtronic*, and were rejected by this Court. In *Medtronic*, this Court granted the defendants there, who like Sunny Fresh prevailed on the issue of patent non-infringement, the full amount of requested costs, totaling nearly $75,000 for "exemplification of charts, photographs, and other visual aids," over $120,000 for "exemplification of animations and other computer-generated visual aids," and nearly $125,000 for "exemplification by electronic scanning for trial presentation system." (Ex. G).

This Court was justified in granting that award, since "exemplification" has been interpreted to embrace all manner of demonstrative exhibits, including models, charts,

photographs, illustrations, and other graphic aids. *See Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 878 F. Supp. 2d 1417, 1428 n.10 (D. Kan. 1995), *aff'd* 76 F.3d 1178 (Fed. Cir. 1996); s*ee also Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 427-28 (7th Cir. 2000). Indeed, the complexity and length of this trial necessitated the use of demonstrative exhibits, and this Court strongly encouraged the use of its advanced courtroom technology. (*See, e.g.*, Ex. J (¶ 3); Ex. K).

Once again, Michael Foods asserts, without support, that Sunny Fresh should be denied its costs for exhibits and materials that they purport were immaterial to the non-infringement issue (DO at 24-26). There is simply no such rule, as discussed *supra*. Moreover, Defendants do not identify ***any specific*** exhibit, demonstrative or other evidence that allegedly should be excluded for the purposes of taxing costs. Thus, Defendants' broad brush objections again fall far short of satisfying Defendants' burden to establish that Sunny Fresh's request are unfair or inequitable on that ground. Sunny Fresh addresses Defendants' remaining objections below.

**1. Trial Exhibits Regarding Price Erosion Damages By NERA**

Michael Foods incorrectly states that Sunny Fresh seeks recovery of "the per hour billings of the firm to prepare expert testimony," citing to BOC Exs. 193-194. As shown by those exhibits, Sunny Fresh actually limits its request to the charges for the production of visual exhibits to aid the jury, which as discussed *supra* are proper "exemplification." Sunny Fresh requests only $3,493.75 for items such as "prepared demonstratives" from

the NERA invoices totaling $19,451.34 and does not claim expert witness fees. (*See, e.g.*, BOC Ex. 193 charges for Parker, Esther 3/12/03).

**2. Preparation And Production Of Demonstrative Exhibits, Graphical Exhibits, and Computer Animation**

Defendants contend (DO at 22-23) that other demonstrative exhibits are non-taxable, because "the Federal Circuit has held that such expenses for demonstrative exhibits are not recoverable under Rule 54(d)(1) because they do not fall under §1920 per the *Crawford* decision," citing *Kohus v. Cosco, Inc.*, 282 F.3d 1355, 1359 (Fed. Cir. 2002). Defendants mischaracterize that case and the other authorities that it cites (which in any event, are not controlling, since Eighth Circuit law governs the taxation of specific costs in this case).

In *Kohus*, the Federal Circuit addressed the narrow issue of predicting the Sixth Circuit's view on the allowable costs for a video exhibit that substituted for a physical model. 282 F.3d at 1360-61. The Federal Circuit disallowed costs only for physical models and video representations of such models, which it did not believe that the Sixth Circuit would consider taxable. *Id.* The Federal Circuit recognized that the Sixth Circuit and other circuits permit the taxation of costs for other audio/visual materials and equipment for displaying those materials. *Id.* at 1359-61.

Defendants do not identify expenses for ***any*** physical models or video representations of physical models that Sunny Fresh claims as recoverable costs. Defendants also ignore that this Court rejected virtually identical objections in *Medtronic* and allowed over $200,000 of costs for similar demonstratives, video equipment, video

equipment operators, etc. (Ex. C at 7-9; Ex. G at 2). Moreover, in the *Glenayre* case cited by Defendants (DO at 23), the court held that costs for demonstratives, such as charts, maps, photos, and motion pictures, are in fact taxable. *Glenayre Elecs., Inc., v. Jackson*, No. 02 C 0256 2003 WL 21947112, at *4 (N.D. Ill. Aug. 11, 2003).

In the *Vornado* case cited by Defendants (DO at 23), the court also expressly held that taxation of costs for the type of demonstrative exhibits claimed by Sunny Fresh is allowed, as long as they could be useful to the court or jury. *Vornado Air Circulation Sys., Inc., v. Duracraft Corp.*, No. 92-1543-WEB, 1995 WL 794070, at *3 (D. Kan. Nov. 29, 1995). Defendants, again, fail to satisfy their burden of identifying any specific exhibits, charts, other demonstratives and equipment that failed to satisfy the above standards.

Michael Foods also incorrectly argues that the $19,687.37 in costs shown by invoices in Exs. 204 and 205 to Sunny Fresh's Bill of Costs are non-taxable because they relate to validity or inequitable conduct. There is no merit to those objections as discussed *supra*. Those invoices, in fact, show charges for the preparation of several charts and visual aids used at trial to presented data or other factual information relating to the non-infringement issues (e.g. Trial exhibit 1170E, 1937, and 1954).[13/] Furthermore, the charts summarizing prior art processes were relevant to the issue of non-infringement, as they were used to establishing that Sunny Fresh used non-infringing, prior art processes. *See, e.g., Cefalu*, 211 F.3d at 428 ("[s]o long as the means of

---

[13/] Sunny Fresh can provide copies of the exhibits used at trial upon the Court's request.

presentation furthers the illustrative purpose of an exhibit, we believe it is potentially compensable as exemplification.”).

Michael Foods also contends that costs for scanning trial exhibits for the court’s electronic courtroom facilities and equipment should not be taxed. The scanning of those materials, of course, was necessary in order to present exhibits to the jury and to make use of the Court’s advanced electronic courtroom presentation technology (which both sides and the Court used extensively). Defendants’ very argument was rejected by this Court in *Medtronic*, where $124,000.00 was taxed for scanning of similar materials. (Ex. C, pp. 8-9; Ex. G, p. 2). Sunny Fresh requests $4,400 for scanning and $71,377.70 for presentation of trial exhibits, video depositions, and other materials, far less than that awarded in *Medtronic*. Thus, Michael Foods is unable to show why these costs should not be taxed, when they are clearly allowable. *See e.g. Cefalu*, 211 F.3d at 428.

**3. Preparation And Presentation Of Video Depositions (Item VI.B to Sunny Fresh’s Bill of Costs)**

At the Court’s instruction, and for the benefit of the jury, the parties were encouraged to prepare video depositions for witnesses that would not be appearing in person at trial. The video testimony was also synchronized with the written deposition transcript, so that the Court and the jury could read the transcript as they watched and listened to the video. [*See* Dkt. Nos. 295, 373, 374]. This was necessary to take advantage of the Court’s presentation equipment, which the parties were encouraged to use. Defendants’ objection that conversion and editing of those videotape depositions does not qualify as “exemplification” thus is meritless. *Manildra*, 878 F. Supp. at 1428 n.

10. ("exemplification" interpreted to embrace all manner of demonstrative exhibits). In addition, Defendants ignore that this Court granted extensive costs for the preparation and presentation of multimedia displays in the *Medtronic* case. (Ex. G).

Defendants' further assertion that most of the digitized depositions were not used at trial is also simply incorrect. A great number of the video depositions were used at trial: Messrs. Magwire, Glasshoff, Papetti, Polny, Winwood, Samimi, Wilcox, Shafer, and Bradwell all testified by video transcript. Furthermore, the video depositions that were not used at trial were nevertheless "necessarily obtained" as each of those witnesses were listed by one or both parties as potential witnesses. (Ex. M hereto). *Zotos*, 121 F.3d at 364 (depositions necessarily obtained when deponent listed as potential trial witness).

Defendants do not identify ***any*** video depositions that are not taxable for those reasons. In fact, it would be contrary to Judge Rosenbaum's practice and principles of sound judicial administration and trial management to require reading of the transcripts into the record or playing of <u>every single deposition</u> as a condition of recovering costs, as that would simply tend to lengthen trials for no good reason. *See* Fed.R.Evid. 611(a)(2) (court shall control presentation of evidence to avoid needless consumption of time).

**4. Preparation And Presentation Of Trial Exhibits And Video Depositions (Item VI.C to Sunny Fresh's Bill of Costs)**

Defendants object to the items listed in Exhibits 209-211 to Sunny Fresh's Bill of Costs (DO at 26-27), all of which were necessary for presenting demonstrative exhibits and/or video depositions at trial using the Court's technological capabilities. These costs were necessarily incurred to aid in the jury's understanding of the case. Defendants

allege that these costs do not qualify as "exemplification," again ignoring this Court's guidance in *Medtronic,* where this Court rejected the same arguments now made by Defendants. Indeed, in the *Medtronic* case, this Court rejected Defendants' arguments (DO at 22-26) that costs for the preparation of demonstratives are not taxable, and awarded the prevailing party their full costs for expenses of consultants who prepared such demonstratives. (Ex. F, p. 7-8; Ex. G, p. 2).

Other courts have similarly held that such costs are recoverable. In fact, in the *Glenayre* case cited by Defendants (Ex. 8 to Opp. Br.), the court awarded significant costs for rental of multimedia equipment and preparation of various animations and demonstrative exhibits. Other decisions have likewise awarded such costs. *See, e.g., Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 429 (7th Cir. 2000) (awarding costs for computer-based multimedia displays); *Goss Int'l Corp. v. Tokyo Kikai Seisakusho, Ltd.*, No. 000-35-LRR, 2004 U.S. Dist. LEXIS 10164 at * 34 (N.D. Iowa June 2, 2004) (awarding costs for software for graphic presentations of exhibits). (Attached hereto as Ex. H). As such, Sunny Fresh's requests for costs are clearly appropriate and Defendants' objections should be overruled.

**CONCLUSION**

For the foregoing reasons, Sunny Fresh respectfully requests that the Court grant it the costs enumerated in Plaintiff's Bill Of Costs filed herewith, along with post-judgment interest. Up to the date of this submission (September 20, 2005), the costs plus statutory

interest amount to $499,952.62. For every day subsequent to the date of this submission, $17.21 should be added to this sum until full payment of the cost award.