# EXHIBIT D

## Advanced Cardiovascular Systems and Guidant's Response to Medtronic's Objections to Bill of Costs from *Medtronic v. Advanced Cardiovascular Systems, Inc. and Guidant Corporation*, Civil Action No. 97-2459.

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

Medtronic, Inc.,

Plaintiff,

v.

Advanced Cardiovascular Systems, Inc. and Guidant Corporation,

Defendants.

**Civil Action No. 97-2459 JMR/FLN**

**ADVANCED CARDIOVASCULAR SYSTEMS AND GUIDANT'S RESPONSE TO MEDTRONIC'S OBJECTIONS TO BILL OF COSTS**

---

## I. INTRODUCTION

Medtronic has objected to Guidant's Bill of Costs for containing large or unusual expenditures. The expenditures objected to by Medtronic, however, are properly supported by documentation and are reasonable, especially in view of the fact that Medtronic claimed damages in excess of $300 million against Guidant for patent infringement in the present action, which Medtronic further sought to treble to nearly one billion dollars based on its allegation that the infringement was willful. Moreover, a number of complex legal and factual issues were presented at trial, including patent infringement, invalidity, inventorship, willful infringement, and reasonable royalties. For the reasons set forth below, Guidant respectfully requests that its Bill of Costs be granted as amended.

## II. THE DISPUTED COSTS

For the convenience of the Clerk, a chart comparing Guidant's amended position on costs, Medtronic's position on costs, and the disputed costs (*i.e.*, the difference between Guidant's and Medtronic's respective positions) is attached hereto as Exhibit A.

### A. Fees of the Court Reporter

Guidant is entitled to recover the fees of the court reporter for court transcripts under 28 U.S.C. § 1920(2). Medtronic has not objected to the costs of the court reporter in connection with the transcripts for the Markman and Motions hearings. But Medtronic has objected to the costs of the daily trial transcript and Realtime/ASCII disks.

Medtronic, however, has ignored the fact that, in addition to the appeal to the Federal Circuit, the daily transcripts were cited by both parties in connection with numerous motions filed during the trial. *See Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1184 (Fed. Cir. 1996) (costs for daily trial transcript may be awarded "if the case is complex and the transcripts proved invaluable to both counsel and the court"). Notably, Medtronic has not disputed the fact that specific pages from the daily trial transcript were cited and relied upon in Guidant's oral Rule 50(a) motion for JMOL which was granted by the Court. Moreover, the daily trial transcripts were also cited in numerous JMOL and *in limine* motions filed by **both** parties during the trial. These motions included:

- Medtronic's Memorandum of Law In Support of Its Motion for Summary Judgment or In the Alternative Judgment as a Matter of Law on Written Description;
- Guidant's Bench Memorandum in Support of the Offer of Proof Regarding the Proffered Testimony of Beverly A. Huss;

- Medtronic's Memorandum in Support of Its Motion to Strike Portions of Dr. Schneiderman's Direct Testimony; and
- Medtronic's Opposition to Defendants' Rule 50 Motion on Zig-Zags Lying Flat with Respect to the Cylinder.

The Realtime/ASCII service provided by the court reporter improved the efficiency of the proceedings at trial. The service allowed the attorneys to better follow testimony and avoid unnecessary objections, and the service allowed the attorneys seated at the counsel table to follow sidebar conferences with the Judge. Guidant respectfully submits that this expense was reasonably necessary for the present complex case.

However, should the Clerk determine that Medtronic should be taxed only for the daily trial transcript (at $5.00 per page) in this action, the following chart summarizes the cost of the daily trial transcript:

| COURT PROCEEDING | DATE | PAGES | TOTAL |
|---|---|---|---|
| Daily Trial Transcripts ($5.00 per page) | 10/18/99 to 10/20/99 | 437 pages | $2185.00 |
| | 11/01/99 to 11/03/99 | 322 pages | $1610.00 |
| | 11/08/99 to 11/10/99 | 313 pages | $1565.00 |
| | 11/15/99 to 11/17/99 | 309 pages | $1545.00 |
| Total Costs for Daily Trial Transcripts: | | | $6905.00 |

## 2. Deposition Transcripts

Medtronic incorrectly asserts that Guidant has requested costs for "all deposition transcripts created in the case." Medtronic Objections at p. 3. Guidant has not claimed costs for

over a dozen depositions taken in this case. These unclaimed deponents include Carrie Bates, Andrew Brown, William Chang, Chris Crall, Justine Fritz, Sammy Hamade, Pam Jefferson, Robert Jones, Sheila Judge, Peter Labatt, Glen Lieber, and Don Tran. Moreover, Guidant has provided the reasons for the necessity of every deposition transcript for which it does claim costs.

Instead of addressing the reasons for the necessity of the deposition for which Guidant claims costs, Medtronic would limit the Bill of Costs to depositions actually used at trial. Beyond repeating the Procedure for Taxing Costs' guideline that deposition costs are "[g]**enerally** allowed only when read into the record or received as evidence" (emphasis added), Medtronic has not rebutted Guidant's reasons for requesting the costs of its deposition transcripts.[1] Contrary to Medtronic's suggestion, there is no strict requirement that a deposition transcript must be used at trial in order to be an allowable cost. Indeed, both the District Court of Minnesota and the Eighth Circuit have recognized that deposition transcripts not actually used at trial may be still be an allowable cost. *Ryther v. KARE 11*, 864 F. Supp. 1525, 1534 (D. Minn. 1994) (the costs of a deposition transcript not used in a court proceeding "may still be taxable when the deposition appeared reasonably necessary to the parties at the time it was taken); *Slagenweit v. Slagenweit*, 63 F.3d 719, 721 (8th Cir. 1995) (deposition not introduced at trial was

---

[1] Medtronic also asserts that Guidant cannot recover the costs of both the stenographic and video transcript. There is, however, no prohibition to taxing the cost of both the stenographic and video transcripts in the guidelines of the Procedure for Taxing Costs. Indeed, courts have permitted recovery of costs for both the stenographic and video transcripts. *See Meredith v. Schreiner Transport, Inc.*, 814 F. Supp. 1004 (D. Kan. 1993); *Morrison v. Reichhold Chemicals, Inc.*, 97 F.3d 460 (11th Cir. 1996); *Tilton v. Capital Cities*, 115 F.3d 1471 (10th Cir. 1997). Moreover, Medtronic's attempt to exclude the costs of video transcripts also ignores the undisputed fact that Dr. Christopher White testified at trial by video deposition (and whose stenographic deposition transcript was submitted in connection with a summary judgment motion). Medtronic thus would disallow the cost of the video transcript which was presented in lieu of live testimony at the trial.

properly taxed as cost because the deposition was neither "purely investigative" nor obtained "for reasons other than trial preparation").

The legal standard is whether the deposition appeared reasonably necessary at the time it was taken. *Ryther*, 864 F. Supp. at 1534. Actual use of a deposition transcript in a court proceeding is direct evidence of necessity, but a deposition transcript need not be introduced at trial in order to be an allowable cost. *Id.*; *see also Manildra*, 76 F.3d at 1184 (costs for a deposition transcript may be awarded "even if unused at trial").

Indeed, Medtronic has ignored the deposition transcripts of Anthony Castro, Daniel Latham, Harry Manbeck, Stephen Ramee, and Dominik Wiktor that were submitted in connection with Summary Judgment motions filed in this action. Such deposition transcripts were received as evidence in support of those motions, and clearly are allowable under the guidelines of the Procedure for Taxing Costs. *See also Bathke v. Casey's General Stores, Inc.*, 64 F.3d 340, 347 (8th Cir. 1995) (costs awarded for deposition transcripts submitted in connection with summary judgment motions).

The deposition transcripts for the witnesses identified in either parties' witness list for trial were also necessarily obtained for use in the case so that counsel could properly prepare for the possible testimony based on the notice given by the witness lists that were exchanged by the parties. *Zotos v. Lindberg School District*, 121 F.3d 356, 363-364 (8th Cir. 1997) (costs awarded for deposition transcripts of deponents who had been listed as trial witnesses); *see also Manildra*, 76 F.3d at 1184 (deposition transcript were reasonably necessary because "at the time they were taken, the deponents were potential trial witnesses"). Similarly, the deposition transcript of the witnesses who gave live testimony at trial were necessarily obtained for use in the case so that counsel could properly prepare for their trial testimony. And the deposition transcripts that were

considered by testifying experts (as indicated in their respective expert reports) in support of their expert opinion testimony on behalf of either party in connection with this action were necessarily obtained for use in the case so that the experts could properly prepare and give their expert opinions at trial.

For the convenience of the Clerk, a chart summarizing the categories of deponent witnesses for which costs are claimed is attached hereto as Exhibit B. Guidant is entitled to recover the fees of the court reporter for the deposition transcripts of these witnesses under 28 U.S.C. § 1920(2).

### 2. Transcripts of Wiktor Audiotapes and Videotapes

Guidant is also entitled to recover the fees of the court reporter for transcripts of audiotape and videotape recordings made by Mr. Dominik Wiktor who testified at trial. These transcripts were also marked as trial exhibits (*see* DTX2600 - DTX2635), and were reasonably necessary in preparation for Mr. Wiktor's trial testimony as prior contemporaneously-made statements and present sense impressions of Mr. Wiktor. In addition, the requested court reporter fees include the transcription of statements made by Mr. Wiktor on videotape that was played back by Medtronic during trial as trial exhibit TX893.

## B. Fees for Witnesses

Medtronic has also objected to the travel expenses for Larry Evans, Jerry Hausman, and Michael Warnecke. Medtronic seeks to disallow the travel expenses of these witnesses in their entirety. Medtronic's position is unfounded.

With respect to Mr. Evans' travel expenses, Medtronic asserts that his $1664.00 air travel expense included a trip to Florida. Medtronic is mistaken. While Mr. Evans' invoice does make

reference to a "trip to Florida," that expense is separately itemized as "Fla. Air Charge," and thus was not part of his $1664.00 air travel expense. Moreover, Medtronic has submitted no evidence to establish that Mr. Evans' $1664.00 air fare was not the most economical rate when his travel arrangements were made.

With respect to Mr. Hausman's travel expenses, Medtronic asserts that his $1464.30 travel expense should be disallowed in its entirety because it was not limited to air travel because his invoice identifies the expense as "air, hotel, dinner, taxi." However, the "air" and "taxi" expenses clearly are allowable travel costs. And since Guidant paid for Mr. Hausman's hotel and meals at trial, the reference to "hotel" and "dinner" appears to be a minor typographical error. Accordingly, Mr. Hausman's $1464.30 travel expense represents an allowable travel expense.

With respect to Mr. Warneke's travel expenses, Medtronic asserts that his travel expense of $2661.75 included three trips to Minneapolis. Mr. Warneke did travel to Minneapolis several times to listen to the trial testimony of other witnesses in preparation for his expert testimony. *See Linneman Construction, Inc. v. Montana-Dakota Utilities Co., Inc.*, 504 F.2d 1365, 1372 (8th Cir. 1974) (noting the general rule that witness and subsistence expenses "include those days in which the witness necessarily attends trial"); *Am. Steel Works v. Hurley Construction Co.*, 46 F.R.D. 465, 468 (D. Minn. 1969) (awarding costs of expert witness who attended trial to hear trial testimony in advance of his testimony). Nonetheless, should the Clerk determine that three trips were unnecessary, Guidant would agree to reduce Mr. Warneke's travel expenses by one-third to $887.25.

Accordingly, Guidant respectfully requests that the Clerk award Guidant $9513.55 (or, in the alternative, S7739.05) under 28 U.S.C. § 1920(3) for witnesses fees.

### C. Fees for Copies of Papers and Exemplification

#### 1. Copies of U.S. Patent Office Records

Medtronic does not dispute that Guidant is entitled to recover the costs associated government patent office records under 28 U.S.C. § 1920(4). However, Medtronic asserts that the receipts reflect the obtainment of two certified copies of U.S. Patent No. 5,653,727. While one of the receipts does identify two patent numbers (*i.e.*, U.S. Patent Nos. 5,653,727 and 5,133,732), the title for the receipt identifies only the `732 patent number. In addition, the receipt indicates that the file history as having 607 pages, yet the file history of the `727 patent includes over 1,000 pages according to the appeal appendix prepared by Medtronic. Therefore, this receipt apparently was not for both the `732 and `727 patent. However, Guidant does agree to reduce its requested cost by $35.00 (*i.e.*, half of the $70 charge for two copies of the `727 patent). Accordingly, Guidant respectfully requests that the Clerk award Guidant $1987.20 as the amended cost associated with government patent office records.

#### 2. Exemplification of Physical Models

Medtronic objected to the cost of physical models used at trial as a large or unusual expenditure and because the models were used merely to illustrate the witnesses' testimony and were not necessary to understand the case. The physical models, however, were used to assist the jury and the Court in understanding the complex issues and technology presented in this action.[2] *See Cefalu v. Village of Elk Grove*, 211 F.3d 416, 428 (7th Cir. 2000) (costs may be awarded for familiar means of illustration such as models, charts, graphs and the like). For example, Guidant's physical models were used by the testifying experts and by fact witnesses

---

[2] Several of these models were also designated for use in the appeal to the Federal Circuit after the trial.

such as Mr. John Nagy (*e.g.*, DTX2889) to rebut assertions made by Medtronic in connection with its own model (*i.e.*, TX1600). Moreover, Medtronic even relied on Guidant's physical model of a stent (DTX2800a) in support of its Opposition to Defendants' Rule 50 Motion on Zig-Zags Lying Flat with Respect to the Cylinder that Medtronic filed during trial.

"Exemplification" has been interpreted to embrace all manner of demonstrative exhibits, including models, charts, photographs, illustrations, and other graphic aids. *See Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 878 F. Supp. 1417, 1428 n.10 (D. Kan. 1995) (citation omitted), *aff'd*, 76 F.3d 1178 (Fed. Cir. 1996). Guidant is entitled to recover the costs of exemplification under 28 U.S.C. § 1920(4) relating to the production and/or purchase of physical models of the disclosed embodiments of the patented invention and of the accused product necessarily obtained for use as trial exhibits, including trial exhibits DTX2849 to DTX2890 which were clearly identified in Guidant's exhibit list as "models."

### 3. Exemplification of Charts, Diagrams, Photographs, and Other Visual Aids

Medtronic objected to the costs associated with the exemplification of charts, diagrams, photographs and other visual aids as a large or unusual expenditure, and because the charts and other visual aids were used merely to illustrate the witnesses' testimony and were not necessary to understand the case. Medtronic's objection that trial exhibits were not identified by number is without merit since its assertion the visual aids "were primarily used merely to illustrate the testimony of expert witnesses" illustrates that Medtronic understood which trial exhibits fell in this category. Moreover, trial exhibits DTX2315 - DTX2470 were clearly identified in Guidant's exhibit list as "charts," and trial exhibit DTX2466 was a designated exhibit for the subsequent appeal to the Federal Circuit.

Guidant is entitled to recover the costs of exemplification under 28 U.S.C. § 1920(4) relating to the preparation of charts, photographs, and other visual aids necessarily obtained for use as trial exhibits to assist the jury and the Court in understanding the complex issues presented in this action. Courts often allow the costs of such exemplification. *Maxwell v. Hapag-Lloyd Aktiengesellschaft*, 862 F.2d 767, 770 (9th Cir. 1988) (§ 1920(4) embraces expenses of producing photographs and other types of demonstrative evidence); *see also Rosebrough Monument Co. v. Memorial Park Cemetary Assn.*, 572 F. Supp. 92, 94 (E.D. Mo. 1983) (costs of exhibits and photographs were taxed); *Welsch v. Likins*, 68 F.R.D. 589, 597 (D. Minn. 1975) (photographic expenses were taxed as costs).

**4. Exemplification of Animation and Other Computer-Generated Visual Aids**

Medtronic objected to the animation and other computer-generated visual aids as a large or unusual expenditure where the computer-generated animation was used merely to illustrate the witnesses' testimony and were not necessary to understand the case. Again, Medtronic's objection that trial exhibits were not identified by number is contrived since its assertion the computer-generated visual aids "were primarily used merely to illustrate the testimony of expert witnesses" indicates that Medtronic understood which trial exhibits fell in this category.

The computer-generated visual aids were necessarily obtained to assist the jury and the Court in understanding the complex issues and medical technology presented in this action by utilizing the inherent electronic multi-media capabilities of the courtroom. *See Cefalu*, 211 F.3d at 429 (a party can recover "the cost of computer generated, multi-media presentations"). Moreover, the computer-generated visual aids were also necessary to counter the computer-generated visual aids and animations that Medtronic presented at trial (*e.g.*, TX1593).

Referring to the state of the art technology in his courtroom, Judge Rosenbaum is quoted in the Minnesota District Court's "Courtroom Technology Training" brochure (attached hereto as Exhibit C) as saying:

> Our new evidence technology brings the Courts into the present age. Now it's the Court's turn to give our citizens the information they need – and in a form they can use.

The costs associated with computer-generated visual aids are reasonable and should be allowed, especially in light of the technological capabilities of Judge Rosenbaum's courtroom. Computerized presentation of evidence has become the norm, and its use is encouraged by the courts. Guidant is entitled to recover the costs of exemplification under 28 U.S.C. § 1920(4) relating to the preparation of animations, 3-D modeling of stents, and other computer-generated visual aids necessarily obtained to utilize the built-in electronic multi-media capabilities of the courtroom and to assist the jury and the Court in understanding the complex issues and medical technology presented in this action.

**5. Cost for Electronic Scanning of Exhibits and for Computer Presentation System Used for Trial**

Medtronic has objected to the cost for electronic scanning of exhibits for the computer presentation system used at trial as a large or unusual expenditure made without prior court approval and because the trial exhibits were not identified by number. The reference to "all trial exhibits" in Medtronic's Objections, however, indicates that Medtronic understood that this cost pertained to all of the trial exhibits. Medtronic's assertion that this cost constitutes "yet another copy of the trial exhibits" is also without merit, and essentially compares apples to oranges. The cost of electronic scanning the trial exhibits for exemplification is separate from the cost of photocopying the trial exhibits. *See Cefalu*, 211 F.3d at 428 ("So long as the means of presentation furthers the illustrative purposes of an exhibit, we believe it is potentially

compensable as exemplification."). The electronic scanning allowed the parties to utilize the advanced electronic courtroom presentation technology provided by Judge Rosenbaum's courtroom.

Given the fact that Judge Rosenbaum's courtroom is pre-wired with an electronic presentation system that the parties were encouraged to utilize, the costs associated with the electronic scanning of exhibits for the computer presentation system used at trial is not a unusual expenditure. Guidant is entitled to recover the costs of exemplification under 28 U.S.C. § 1920(4) relating to the cost of scanning trial exhibits associated with the computer presentation system used for trial in order to utilize the built-in multi-media capabilities of Judge Rosenbaum's courtroom and to assist the jury and the Court in understanding the complex issues presented in this action.

DATE: August 23, 2001

By: ______________________

Lori Ann Wagner (#178871)
FAEGRE & BENSON, LLP
90 South Seventh Street
Minneapolis, Minnesota 55402-3901
Tel: (612) 336-3000

ATTORNEYS FOR DEFENDANTS ADVANCED CARDIOVASCULAR SYSTEMS, INC. AND GUIDANT CORPORATION

Richard A. Bardin (CA#36,627)
John S. Nagy (CA#128,762)
John K. Fitzgerald (CA#166,821)
James Juo (CA#193,852)
FULWIDER PATTON
LEE & UTECHT, LLP
6060 Center Drive, Tenth Floor
Los Angeles, California 90045
Tel: (310) 824-5555

Aldo A. Badini
Henry Ricardo
DEWEY BALLANTINE LLP
1301 Avenue of the Americas
New York, New York 10019-6902
Tel: (212) 259-8000

OF COUNSEL

# EXHIBIT A

| ITEMIZATION OF COSTS | Guidant's Position | Medtronic's Position | Disputed Amount |
|---|---|---|---|
| Fees of the Clerk | $ 1125.00 | $ 1125.00 | — |
| Markman Hearing Transcript | $ 502.00 | $502.00 | — |
| Motions Hearing Transcript | $ 477.00 | $ 477.00 | — |
| Trial Transcripts (original) — (alternative) | $ 16892.25 — *$ 6905.00* | $ 4143.00 | $ 12749.25 — *$ 2762.00* |
| Deposition Transcripts | $ 68978.37 | $ 18335.08 | $ 50643.29 |
| Transcripts of Wiktor Audiotapes and Videotapes | $ 4275.75 | — | $ 4275.75 |
| Fees for Witnesses (original) — (alternative) | $ 9513.55 — *$ 7739.05* | $ 3723.50 | $ 5790.05 — *$ 4015.55* |
| Copies of Papers for Trial | $ 3240.00 | $ 3240.00 | — |
| Copies of U.S. Patent Office Records (as amended) | *$1987.20* | $ 1168.60 | $ 818.60 |
| Copies of Prior Art Journal Articles | $ 1081.65 | $ 1081.65 | — |
| Production/purchase of Physical Models | $ 64790.10 | — | $ 64790.10 |
| Exemplification of Charts, Photographs, and Other Visual aids | $ 74594.11 | — | $ 74594.11 |
| Exemplification of Animations and Other Computer-generated Visual Aids | $ 120279.03 | — | $ 120279.03 |
| Exemplification by Electronic Scanning for Trial Presentation System | $ 124580.84 | — | $ 124580.84 |
| Docket Fees | $ 20.00 | $ 20.00 | — |
| (original, as amended) — TOTALS: (alternative) | $ 492,336.85 — *$ 480,575.10* | $ 33,815.83 — $ 33,815.83 | $ 458,521.02 — *$ 446,759.27* |

# EXHIBIT B

| DEPONENT | Deponent testified at trial | Deposition used at trial | Deposition used in support of motion | Deposition considered by testifying expert | Deponent cited on witness list |
|---|---|---|---|---|---|
| Barclay, Bruce | ✔ | ✔ | | ✔ | ✔ |
| Baumgardt, James | | | | ✔ | ✔ |
| Castro, Anthony | | | ✔ | ✔ | ✔ |
| Chao, Cecilia | | | | | ✔ |
| Collins, Art | ✔ | | | | ✔ |
| Dolan, Robert | ✔ | ✔ | | | ✔ |
| Dollens, Ron | | | | | ✔ |
| Evans, Larry | ✔ | ✔ | | | ✔ |
| Faleschini, Richard | ✔ | | | | ✔ |
| Gellert, Scott | | | | ✔ | ✔ |
| George, William | | | | ✔ | ✔ |
| Graham, Ginger | ✔ | | | ✔ | ✔ |
| Hartigan, William | | | | ✔ | |
| Hausman, Jerry | ✔ | ✔ | | | ✔ |
| Hermiller, James | ✔ | ✔ | | | ✔ |
| Huss, Beverly | ✔ | | | ✔ | ✔ |
| Johnson, Timothy | | | | | ✔ |
| Klepinski, Robert | ✔ | ✔ | ✔ | ✔ | ✔ |
| Knopf, William | | | | | ✔ |
| Lam, Sharon | | | | | ✔ |
| Latham, Daniel | ✔ | | ✔ | ✔ | ✔ |
| Lau, Lilip | | ✔ | | ✔ | ✔ |
| Lynch, Edward | ✔ | ✔ | | ✔ | ✔ |
| Manbeck, Harry | ✔ | | ✔ | | ✔ |

| DEPONENT | Deponent testified at trial | Deposition used at trial | Deposition used in support of motion | Deposition considered by testifying expert | Deponent cited on witness list |
|---|---|---|---|---|---|
| Murray, Mark | | | | ✔ | ✔ |
| Nagy, John | ✔ | ✔ | | ✔ | ✔ |
| Neels, Guido | | | | ✔ | |
| Patton, Harold | | | | ✔ | ✔ |
| Pearle, David | ✔ | ✔ | ✔ | ✔ | ✔ |
| Racano, Vincent | | | | | ✔ |
| Ramee, Stephen | | | ✔ | | ✔ |
| Schneiderman, Gary | ✔ | | | | ✔ |
| Shy, James | ✔ | | | ✔ | ✔ |
| Solano, Scott | | | | | ✔ |
| Spaulding, Ronald | | | | ✔ | |
| Swinehart, Gregory | ✔ | ✔ | | | ✔ |
| Van Sloun, Math | | | | ✔ | ✔ |
| Warnecke, Michael | ✔ | ✔ | ✔ | | ✔ |
| White, Christopher | ✔ (by video deposition) | ✔ | ✔ | ✔ | ✔ |
| Wiktor, Dominik | ✔ | | ✔ | ✔ | ✔ |
| Wolff, Rodney | ✔ | | | ✔ | ✔ |

## State of the Art Technology

"Today, electronic information is commonplace. People get their cash from electronic devices. Groceries are scanned in the supermarket checkout line. Every classroom accesses electronic information on the web. Our new evidence technology brings the Courts into the present age. Now it's the Court's turn to give our citizens the information they need – and in a form they can use."

James M. Rosenbaum
Chief Judge



Judge Rosenbaum helps out with the Courtroom Technology.

*United States District Court*
*District of Minnesota*

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
612-664-5000

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
651-848-1100

417 Federal Building
515 West First Street
Duluth, MN 5580
218-529-3500

*United States District Court*
*District of Minnesota*

# Courtroom Technology Training

James M. Rosenbaum, Chief Judge
Richard D. Sletten, Clerk of Court

# *Courtroom Technology*



The United States District Court for the District of Minnesota recently began the installation of new Courtroom Technology. Training is being offered in both the Minneapolis and St. Paul Courthouses to introduce lawyers to the new technology and give them an opportunity to try out the technology in a classroom atmosphere. Training for this new technology will be on-going as new attorneys are admitted into the Federal Court. There is no cost associated with the training. We hope that you will take advantage of this training opportunity.

## Courtroom Features



Control Panel for the Judges

### Bench

- 10" Touch Panel (Control for all Components)
- 15" Flat Panel Monitor
- 2—15" Monitors on the Lower Bench

### Attorney Tables

- 15" Flat Panel Monitors

### Jury

- 4—15" Monitors in Mpls
- 2—20" Monitors in St. Paul

### Witness

- Annotation Monitor

### Lectern

- Time Indicators

### Gallery

- Spectator Monitor

### Evidence Presentation Cart

- Microphone
- Computer Input
- Digital Document Camera
- VCR
- Cassette Deck
- Annotation Monitor
- 5" Touch Panel (Control for all components on the cart)

### Audio System

- Bench Conference/Pink Noise
- Wireless Microphone System
- Hearing Assistance
- Second Language

## Training Offerings

To view scheduled training sessions, please visit our web site (www.mnd.uscourts.gov) and click on the Courtroom Technology link. For additional questions, please call Kristine at 612-664-5125.

### CLE Credit

Participants can obtain 1.0 credit of CLE for attending a Courtroom Technology training session. Forms and additional information can be found on the District Court of Minnesota's website.



Training is hands-on for the participants.

### Class Size

To make the experience more personable and allow for hands-on opportunities, class size is limited to 12 participants.

### Customized Training

Customized classes are available upon request. Classes can be scheduled to accommodate smaller class sizes, employees from one law firm, or on a date not published in the schedule.

# CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing:

**ADVANCED CARDIOVASCULAR SYSTEMS AND GUIDANT'S RESPONSE TO MEDTRONIC'S OBJECTIONS TO BILL OF COSTS**

on August 23, 2001, by causing a copy to be sent via Express Mail overnight delivery in an envelope addressed as follows:

Michael V. Ciresi, Esq.
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, Minnesota 55402-2015

James Juo