# EXHIBIT H

# Goss Int'l Corp. v. Tokyo Kikai Seisakusho, Ltd., 00-35, 2004 U.S. Dist LEXIS 10164 (N.Dist. Iowa, June 2, 2004).

LEXSEE 2004 US DIST LEXIS 10164

**GOSS INTERNATIONAL CORPORATION, a Delaware corporation, Plaintiff, vs. TOKYO KIKAI SEISAKUSHO, LTD., a Japanese corporation and TKS (U.S.A.), Inc., a Delaware corporation, Defendants.**

**No. C00-35 LRR**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF IOWA, CEDAR RAPIDS DIVISION**

***2004 U.S. Dist. LEXIS 10164***

**June 2, 2004, Decided**

**PRIOR HISTORY:** *Goss Int'l Corp. v. Tokyo Kikai Seisakusho, Ltd., 321 F. Supp. 2d 1039, 2004 U.S. Dist. LEXIS 10024 (N.D. Iowa, May 26, 2004)*

**DISPOSITION:** **[*1]** Goss's Amended Petition for Fees and Costs Pursuant to *15 U.S.C. § 72* GRANTED in part and DENIED in part. Court awarded to Goss attorneys' fees and expenses in the amount of $ 3,484,158.00. Court approved costs in the amount of $ 681,475.05 to taxed against TKS: Fees of the clerk - $ 270.00; Fees of the court reporter for transcripts necessarily obtained for use in this case - $ 68,136.70; Fees and disbursements for printing and witnesses -$ 3,520.38; Fees for exemplification and copies of papers - $ 555,462.59; Fees for compensation interpreters - $ 54,085.38.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Goss International Corporation, Plaintiff: Bradley P Nelson, Ian H Fisher, Jose A Lopez, Mary Beth Wynn-Smith, Steven A Weiss, William G Schopf, LEAD ATTORNEYS, Schopf & Weiss, Chicago, IL.

For Goss International Corporation, Plaintiff: Patrick M Roby, Robert M Hogg, LEAD ATTORNEYS, Elderkin Law Firm, Cedar Rapids, IA.

For Tokyo Kikai Seisakusho, Ltd., TKS (U.S.A.), Inc., Defendants: Barry J Reingold, LEAD ATTORNEY, Perkins Coie, LLP, Washington, DC.

For Tokyo Kikai Seisakusho, Ltd., TKS (U.S.A.), Inc., Defendants: Nicholas V Critelli, **[*2]** Jr, LEAD ATTORNEY, Nicholas Critelli Assoc, Des Moines, IA.

For TKS (U.S.A.), Inc., Defendant: Nicholas (Tre) Critelli, III, LEAD ATTORNEY, Nicholas Critelli Assoc, Des Moines, IA.

**JUDGES:** LINDA READE.

**OPINIONBY:** LINDA READE

**OPINION:**

**ORDER REGARDING PLAINTIFF'S AMENDED PETITION FOR FEES AND COSTS PURSUANT TO *15 U.S.C. § 72***

***I. INTRODUCTION***

This matter comes before the court pursuant to Plaintiff Goss International Corporation's ("Goss") Amended Petition for Fees and Costs Pursuant to *15 U.S.C. § 72* (docket no. 440) (the "Amended Petition"). Defendants Tokyo Kikai Seisakusho, Ltd. and TKS (U.S.A.), Inc. (collectively "TKS") have resisted Goss's Amended Petition. The matter therefore is fully submitted.

Goss brought this action against TKS alleging it had illegally dumped its large newspaper printing presses in the United States in violation of the Antidumping Act of 1916, *15 U.S.C. § 72* (the "1916 Act"). Following an eleven-day trial, the jury returned a verdict in favor of Goss on its claims. Specifically, the jury found that TKS caused injury to Goss with respect to three sales: the Dallas Morning News (the "DMN") **[*3]** in 1996, the Orlando Sentinel (the "OS") in 1997, and the Newark Star Ledger (the "NSL") in 1997. The jury awarded damages to Goss totaling $ 10,539,949. The 1916 Act provides for treble damages and the court entered judgment in favor of Goss in the amount of $ 31,619,847.00.

The 1916 Act codifies an award of attorneys' fees for a party who prevails on a dumping claim. Specifically, it states any person who is "injured in his business or property by reason of any violation of, or combination or conspiracy to violate, this section," may sue in United States District Court and, if successful, may recover "the cost of suit, including a reasonable attorney's fee." *15 U.S.C. § 72*. Accordingly, since Goss prevailed in its action under the 1916 Act, it seeks an award of its attorneys' fees and costs of suit. Specifically, Goss seeks $ 3,634,996.20 in attorneys' fees and $ 2,432,460.87 in costs. Goss also seeks in its Bill of Costs filed on Form AO 133 an award of costs in the amount of $ 147,654.02. The court will address Goss's request in each respect in turn.

***II. LEGAL ANALYSIS***

***A. Legal Standards for Award of Attorneys' Fees***

***1. Formulating the lodestar figure* [*4] *for attorneys' fee award***

In calculating the amount of attorney's fees to which a party is entitled, the court first computes the base, or "lodestar" figure by multiplying the number of hours reasonably expended by reasonable the reasonable hourly rates." *Warren v. Prejean, 301 F.3d 893, 904 (8th Cir. 2002)* (quoting *Fish v. St. Cloud State Univ., 295 F.3d 849, 851 (8th Cir. 2002))*. The lodestar figure is "*presumed* to be the reasonable fee to which counsel is entitled." *McDonald v. Armontrout, 860 F.2d 1456, 1458 (8th Cir. 1988)* (quoting *Pennsylvania v. Delaware Valley Valley Citizens' Council for Clean Air, 478 U.S. 546, 564, 92 L. Ed. 2d 439, 106 S. Ct. 3088 (1986)* (internal quotation omitted)). The most critical factor in determining the reasonableness of a fee award is the degree of success obtained. *Hensley v. Eckerhart, 461 U.S. 424, 436, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983)*. When making the determination of a reasonable fee, a court should consider the "plaintiff's overall success; the necessity and usefulness of plaintiff's activity in the particular matter for which fees are requested; and the efficiency with which **[*5]** plaintiff's attorneys conducted that activity." *Jenkins v. Missouri, 127 F.3d 709, 718 (8th Cir. 1997)* (en banc). Reductions may be made, however, "for such things as partial success, duplicative hours or hours not reasonably expended, or for 'block billing' or poor record-keeping." *Baker v. John Morrell & Co., 263 F. Supp.2d 1161, 1189 (N.D. Iowa 2003). See also H.J. Inc. v. Flygt Corp., 925 F.2d 257, 260 (8th Cir. 1991)* ("Inadequate documentation may warrant a reduced fee ... Incomplete or imprecise billing records preclude any meaningful review by the district court of the fee application for 'excessive, redundant, or otherwise unnecessary' hours and may make it impossible to attribute a particular attorney's specific time to a distinct issue or claim.") (quoting *Hensley, 461 U.S. at 437*).

Generally, a reasonable hourly rate is the prevailing market rate, or the "ordinary rate for similar work in the community where the case has been litigated." *Moysis v. DTG Datanet, 278 F.3d 819, 828-29 (8th Cir. 2002)* (quoting *Emery v. Hunt, 272 F.3d 1042, 1047 (8th Cir. 2001))*. "To inform **[*6]** and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence - in addition to the attorney's own affidavits -that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to -- for convenience - as the prevailing market rate." *Blum v. Stenson, 465 U.S. 886, 895 n.11, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984)*. The party seeking attorney's fees therefore has the burden of proving that its request for fees is reasonable. *Johnston v. Comerica Mortg. Corp., 83 F.3d 241, 246 (8th Cir. 1996)* (citing *Hensley, 461 U.S. at 437*). To satisfy this burden, the fee petitioner must proffer evidence supporting the hours worked and the rates claimed. *Hensley, 461 U.S. at 433*. The party opposing the fee award must then challenge the reasonableness of the requested fee by affidavit or brief with enough specificity to give the fee petitioner notice. *Bell v. United Princeton Props., Inc., 884 F.2d 713, 715 (3rd Cir. 1989)*. **[*7]**

In determining a reasonable attorney's fee, the court should consider the factors set forth in *Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). McDonald, 860 F.2d at 1459. Johnson* calls for a consideration of the following factors: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson, 488 F.2d at 717-19*. The court need not address exhaustively every factor. *Emery, 272 F.3d at 1048*. The court should, however, consider what factors, "in the context of the present case, deserve explicit consideration." *Griffin v. Jim Jamison, Inc., 188 F.3d 996, 997-98 (8th Cir. 1999)*. **[*8]** A court also may consider other factors, such as the attorney's regular hourly rates, skill or representation, the

difficulty of the work performed and counsel's experience and reputation. *Blum, 465 U.S. at 895 n.11* A court should use its own knowledge, experience and expertise in determining the amount of the fee to be awarded. *Gilbert v. City of Little Rock, 867 F.2d 1063, 1066-67 (8th Cir. 1989).*

In this case, Goss seeks reimbursement for the following amounts of attorneys' fees: (1) $ 3,471,613.50 for the law firm of Schopf & Weiss, Goss's lead counsel in the litigation; (2) $ 17,440.96 for the law firm of Elderkin & Pirnie, Goss's local counsel in the litigation; (3) $ 118,138.24 for the law firm of Wiley Rein & Fielding, a law firm in Washington D.C.; and (4) $ 27,803.50 for the law firm of Sakai & Mimura, the law firm that served as local counsel for Goss for depositions and document productions in Japan. The total of Goss's request for attorneys' fees for all counsel involved in the litigation is $ 3,634,996.20. This amount also involves time billed for legal assistants.

This litigation endured the course of over three years and began as **[*9]** a lawsuit involving TKS and six other defendants. On December 18, 2002, Goss dismissed its claims against the four German defendants after reaching a settlement agreement on such claims on December 2, 2002. On February 18, 2003, Goss dismissed its claims against the remaining defendants other than TKS pursuant to a settlement agreement reached on January 25, 2003. Accordingly, Goss proposes to apportion fees and costs incurred by Goss in the litigation among eight defendants for the time period beginning with the filing of the lawsuit and ending on December 2, 2002. Goss attempted to remove from the fees and costs it seeks from TKS all fees and costs directly attributable to the other six defendants and proposes that TKS be held responsible for 25% of the remaining attorneys' fees and costs incurred during this period. Similarly, Goss proposes an apportionment of the attorneys' fees and costs incurred by Goss during the period beginning on December 3, 2002 and ending on January 25, 2003 between TKS and the other two defendants still involved in this litigation. Goss seeks to recover from TKS 50% of the attorneys' fees and costs it incurred during this time period. Finally, Goss seeks **[*10]** to recover from TKS 100% of the attorneys' fees and costs it incurred from January 26, 2003 through the end of the litigation when Goss's efforts in this regard were directed solely at TKS. The court finds this approach to the apportionment of fees and costs to be reasonable.

***a. Hourly rate***

A reasonable hourly rate generally relates to the local market rate. *See Forshee v. Waterloo Indus., Inc., 178 F.3d 527, 532 (8th Cir. 1999).* However, in specialized ares of the law, the national market may provide a reasonable hourly rate. *See Casey v. City of Cabool, 12 F.3d 799, 805 (8th Cir. 1993)* (finding that in some areas of the law fees might more appropriately be determined according to a national market). "Reasonable fees" are to be calculated according to the similar services by lawyers of reasonably comparable skill, experience and reputation in the relevant community. *Blum, 465 U.S. at 895 n. 11.*

The hourly rates for the Schopf & Weiss attorneys and legal assistants _ involved in this litigation and for whom Goss seeks to recover fees are as follows:

| Name of Attorney | 2000 | 2001 | 2002 | 2003 | Average Hourly Rate |
|---|---|---|---|---|---|
| William Schopf (partner) | $ 370 | $ 400 | $ 420 | $ 425 | $ 410.58 |
| Steven Weiss (partner) | $ 315 | $ 340 | $ 360 | $ 370 | $ 340.30 |
| Bradley Nelson (partner) | $ 250 | $ 270 | $ 285 | $ 300 | $ 285.56 |
| Ian Fisher (associate/partner) | $ 190 | $ 205 | $ 225 | $ 245 | $ 226.31 |
| Jose Lopez (associate) | N/A | N/A | $ 190 | $ 210 | $ 209.30 |
| Mary Beth Wynn-Smith (associate) | N/A | N/A | $ 125 | $ 145 | $ 142.46 |
| Other Attorneys | | | | | $ 209.39 |
| Legal Assistants | $ 85- $ 105 | $ 95- $ 105 | $ 105- $ 110 | $ 110 | $ 101.06 |

**[*11]**

The hourly rates set forth above represent the actual hourly rates charged by the Schopf & Weiss attorneys and legal assistants. Counsel for Goss has provided affidavits and declarations regarding their qualifications and the reasonableness of their hourly rates. TKS does not object to the hourly rates charged by the Goss

attorneys and legal assistants.

The court notes this case undoubtedly required a great deal of time and effort by the attorneys and legal assistants at Schopf & Weiss. As the court remarked in its May 26, 2004 Order regarding TKS's Motion for a New Trial and for Judgment as a Matter of Law, the court's research indicates this is the only case to proceed to trial under the 1916 Act. The case involved novel and difficult issues of fact and law and required a great deal of skill and knowledge on the part of attorneys for both Goss and TKS. Additionally, it is clear the case monopolized the time of the attorneys involved in the case and precluded the attorneys from accepting work on other matters. The Goss attorneys were largely successful in their efforts on behalf of their client and do not seek a premium above their regular rates for such success. The court's review **[*12]** of the documentation provided by the Goss attorneys, together with its review of the *Johnson* factors, leads the court to conclude these hourly rates are reasonable.

***b. Reasonable hours spent***

Goss seeks reimbursement for the following number of hours spent by the Schopf & Weiss attorneys and legal assistants throughout the course of the litigation:

| Attorney | Total Number of Hours |
|---|---|
| William Schopf (partner) | 2,083.2 |
| Steven Weiss (partner) | 1,373.0 |
| Bradley Nelson (partner) | 3,004.0 |
| Ian Fisher (associate/partner) | 3,262.0 |
| Jose Lopez (associate) | 1,108.0 |
| Mary Beth Wynn-Smith (associate) | 1,176.0 |
| Other Attorneys | 3,775.0 |
| Legal Assistants | 12,034.0 |

TKS asserts the hours spent by Schopf & Weiss attorneys and legal assistants on the following tasks were not reasonably expended in furtherance of the litigation: lobbying activities, public relations activities including time spent preparing and reviewing press releases, bankruptcy proceedings and activities related to non-TKS defendants. TKS also urges a reduction in the fees claimed by Goss for Schopf & Weiss's services based upon what TKS characterizes as Goss's limited success at trial, and for fees **[*13]** TKS asserts represent administrative and clerical tasks, vague task descriptions, duplicative or excessive hours billed, excessive internal conferencing, and multiple attendance at depositions, hearings and trial.

The court has reviewed the monthly invoices for Schopf & Weiss, the description of services provided therein and the summary of attorney time provided in accordance with Local Rule 54.2. The court concludes, for the most part, the number of hours claimed by the Schopf & Weiss attorneys and legal assistants is reasonable, especially given Goss's degree of success in this litigation. Multiplying the total number of hours claimed for the Schopf & Weiss attorneys and legal assistants by their respective average hourly rates as figured by Goss, the lodestar amount in this case would be $ 5,324,936.56. Of this amount, Goss seeks $ 3,471,613.50 which is the amount attributable to Goss's efforts against TKS in this litigation figured according to the method described above for deducting hours spent on defendants other than TKS. The court, in its discretion, elects to reduce this amount by $ 106,424.19 because it finds excessive the $ 111,424.19 billed by Schopf & Weiss attorneys **[*14]** on Goss's unsuccessful Motion to Amend its Complaint. The court finds $ 5,000.00 to be a reasonable fee for such a motion. Accordingly, the court finds an award of attorneys' fees in the amount of $ 3,365,189.00 is reasonable in this case.

***c. Elderkin & Pirnie***

Goss also seeks an award of $ 17,440.96 for fees charged by Elderkin & Pirnie, Goss's local counsel in this litigation. In support of its request for fees in this regard, Goss provides to the court its summary of attorney time under Local Rule 54.2, which indicates that Elderkin & Pirnie attorneys spent 114.85 hours performing legal research, investigating, preparing for trial and attending trial. Goss also provides a summary of fees incurred and fees sought by Elderkin & Pirnie by month. The hourly rates charged by Elderkin & Pirnie lawyers during the course of this litigation range from $ 225.00 to $ 245.00 per hour for Patrick Roby, a partner with the firm, and from $ 130.00 to $ 145.00 for associates. The affidavit of Patrick M. Roby filed in support of Goss's request for

fees indicates the hourly rate for attorneys of similar experience at comparable firms in the local market range from $ 100.00 to $ 150.00 for **[*15]** associates and from $ 225.00 to $ 300.00 for partners. The court has reviewed the monthly invoices of Elderkin & Pirnie which include hourly rates for Elderkin & Pirnie attorneys involved in the case, descriptions of the tasks performed and hours spent performing such tasks. The court finds Elderkin & Pirnie's hourly rates to be reasonable. The court also finds reasonable the hours Elderkin & Pirnie attorneys spent on the litigation. Accordingly, the court finds Goss is entitled to $ 17,440.96 for Elderkin & Pirnie's fees.

***d. Wiley Rein & Fielding***

The court declines to award Goss any amount for the time spent on this litigation by Wiley Rein & Fielding attorneys. As Goss admits, the attorneys at this firm spent their time "analyzing the Department of Commerce proceedings as they applied during this case; managing exhibits and documents produced in the Department of Commerce proceedings (and used by agreement of the parties in lieu of some written discovery responses); and in monitoring legislative activity regarding the 1916 Act." At trial, the court excluded all evidence regarding the proceedings before the Department of Commerce on the grounds the agency proceedings were **[*16]** not relevant to this 1916 Act case. The court finds these services were not reasonably necessary to this litigation and therefore declines to award Goss any amount for Wiley Rein & Fielding's fees in this matter.

***e. Sakai & Mimura***

Goss seeks $ 27,803.50 in fees paid to the law firm of Sakai & Mimura, which served as local counsel for Goss in Japan and reviewed and analyzed Japanese documents and translation services. The summary of attorney time Goss filed pursuant to Local Rule 54.2 indicates that Sakai & Mimura spent 136.25 hours performing these tasks. The declaration of C. Christian Jacobson filed in support of Goss's request for fees indicates the hourly rates for attorneys at Sakai & Mimura range from approximately $ 200.00 to $ 500.00. Hourly rates for legal assistants at Sakai & Mimura range from approximately $ 140.00 to $ 200.00. The court finds the hours spent by Sakai & Mimura attorneys and legal assistants to be reasonable and the hourly rates charged for such services to be reasonable. Accordingly, the court awards to Goss $ 27,803.50 for the services of Sakai & Mimura.

***2. Reasonable out-of-pocket expenses***

Reasonable out-of-pocket expenses incurred **[*17]** by an attorney which normally would be charged to a fee-paying client ordinarily are includable in a statutory award of fees. *Pinkham v. Camex, Inc., 84 F.3d 292, 294-95 (8th Cir. 1996)* (citing *West Virginia Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 87 n.3, 113 L. Ed. 2d 68, 111 S. Ct. 1138 (1991)*; *Chalmers v. City of Los Angeles, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986)*; *Laffey v. Northwest Airlines, Inc., 241 U.S. App. D.C. 11, 746 F.2d 4, 30 (D.C. Cir. 1984)*; *Northcross v. Board of Educ., 611 F.2d 624, 639 (6th Cir. 1979), cert. denied, 447 U.S. 911, 64 L. Ed. 2d 862, 100 S. Ct. 2999, 100 S. Ct. 3000 (1980))*. These expenses may include, for example, costs for long distance telephone calls, facsimiles, messenger and express mail, *id.*, as well as reasonable travel expenses, *Knutson v. Ag. Processing, Inc., 273 F. Supp.2d 961, 1021 (N.D. Iowa 2003)* (citations omitted).

Goss seeks reimbursement for the following expenses it asserts are reasonable out-of-pocket expenses incurred by Goss's attorneys that normally would be charged to a fee paying client: (1) $ 3,621.94 in long distance telephone expenses; (2) $ 13,620.42 in messenger **[*18]** and overnight expenses; (3) $ 7,871.25 for time billed by coding clerks who Goss employed to assist in coding the voluminous documents produced in this litigation; (4) $ 23,828.27 for expenses incurred by Goss to store documents produced by Goss that TKS would not stipulate Goss could destroy; and (5) $ 91,032.10 in travel expenses.

TKS contends Goss is not entitled to reimbursement for long distance telephone expenses, messenger and overnight expenses, fees paid to coding clerks and document storage expenses because each of these is part of the attorneys' normal office overhead and therefore is not recoverable. TKS further argues Goss's travel expenses should be reduced by at least 31% because Goss's bills include the $ 147.00 bar tab for Goss's December 3, 2003 victory party and TKS should not be required to pay for this and other discretionary expenditures. The court has reviewed the documentation provided by Goss in connection with its request for reimbursement of the long distance charges, the messenger and overnight delivery expenses, the fees paid to coding clerks and the fees paid for document storage. The court finds each of these items represents an out-of-pocket expense **[*19]** of the type normally charged to a fee-paying client. The court concludes Goss's requests with respect to the long distance telephone expenses, the messenger and overnight delivery expenses, the fees paid to coding clerks and the fees paid for storage of the documents TKS would not stipulate could be destroyed are adequately documented and reasonable given the size and nature of this lawsuit. . Goss therefore is entitled to an award of $ 48,941.88 for these expenses.

Regarding Goss's request for reimbursement of travel expenses, while Goss seeks reimbursement for $ 91,032 in travel expenses, much of what Goss provides the court in support of such an award is attorney expense reports without the underlying invoices and copies of receipts for plane tickets or rental cars without documentation regarding the reasons for which such expenses were incurred. As a result, the court is unable to assess the reasonableness of many of the expenses Goss claims. Accordingly, the court awards to Goss $ 24,782.51 in travel expenses. This amount represents the costs which the court finds are documented in a way that allows the court to determine whether such expenses are reasonable, less any expenses **[*20]** the court finds would not normally be charged to a fee paying client, such as the $ 147.50 bar tab and expenses incurred for upgraded valet parking, laundry and other miscellaneous supplies purchased during trial.

Goss also seeks reimbursement for computer-based legal research and for a mock jury exercise it conducted to test its theories and arguments in this case. In the Eighth Circuit, "computer-aided research, like any other form of legal research, is a component of attorneys' fees and cannot be independently taxed as an item of cost in addition to the attorneys' fee award." *Standley v. Chilhowee R-IV Sch. Dist., 5 F.3d 319, 325 (8th Cir. 1993)* (quoting *Leftwich v. Harris-Stowe State College, 702 F.2d 686, 695 (8th Cir. 1983))*. "Computer-based legal research must be factored into the attorneys' hourly rate, hence the cost of the computer time may not be added to the fee award." *Id.* Accordingly, Goss is not entitled to any amounts in addition to Schopf & Weiss's hourly rates for computer-based legal research and the court therefore declines to make such an award. Further, the court finds Goss's decision to undertake a mock jury exercise was **[*21]** not reasonably necessary to further the litigation in this case. Thus, Goss is not entitled to reimbursement for attorneys' fees or expenses incurred in connection with the mock jury exercise.

In sum, the court awards to Goss in attorneys' fees and expenses an amount equal to $ 3,484,158.00.

***B. Allowable Costs of Suit***

The 1916 Act by its terms provides that Goss, as the prevailing party, is entitled to the "cost of suit, including a reasonable attorney's fee." *15 U.S.C. § 72*. The statute does not, however, define what items are recoverable as costs thereunder. Absent a specific definition of the term "costs" in a statute, courts look to the general provisions which govern the taxation of costs in federal courts as a matter of course. *See Neosho R-V Sch. Dist. v. Clark, 315 F.3d 1022, 1031 (8th Cir. 2003)*; *Pinkham, 84 F.3d at 295*. *28 U.S.C. § 1920* expressly identifies the expenses a court may tax as costs against a losing party. *Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 440, 96 L. Ed. 2d 385, 107 S. Ct. 2494 (1987)*. This section provides:

> A judge or clerk of any court **[*22]** of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

*28 U.S.C. § 1920*. "When an expense is taxable as a cost, ... there is a strong presumption that a prevailing party shall recover it 'in full measure.' ... The 'losing party bears the burden of making the showing that an award is inequitable under the circumstances.'" *Concord Boat Corp. v. Brunswick Corp., 309 F.3d 494, 498 (8th Cir. 2002)* (internal citations omitted). In light of the foregoing, the court will analyze the costs for which Goss seeks reimbursement in this case in the context of *28 U.S.C. § 1920*. The court **[*23]** will consider the costs Goss requests in its Amended Petition together with the costs Goss seeks to recover on its Bill of Costs submitted on Form AO 133.

***1. Fees of the clerk and marshal***

In its Bill of Costs, Goss seeks reimbursement in the amount of $ 270.00 for fees of the clerk. TKS agrees that Goss is entitled to this amount. The court therefore finds it appropriate to award to Goss $ 270.00 for fees paid to the Clerk of Court.

Goss seeks in its Bill of Costs $ 1,660.50 for service of summons and subpoenas. Additionally, Goss seeks an award of $ 3,312.50 in expenses it incurred serving deposition subpoenas on witnesses and for witness fees.

Expenses incurred for use of a special process server are not allowed under *28 U.S.C. § 1920* because the statute contains no provision for such expenses. *Crues v. KFC Corp., 768 F.2d 230, 234 (8th Cir. 1985)* (citing *Zdunek v. Washington Metropolitan Transit Authority, 100 F.R.D. 689, 692 (1982)*; 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2677 at 371-72 (1983)). The documentation provided by Goss in support of this request reveals that all costs **[*24]** incurred by Goss in this regard are a result of the use of special process servers. The court therefore declines to award to Goss any amounts incurred for service of summons and subpoenas.

***2. Fees of the court reporter for transcripts necessarily obtained for use in the case***

"Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case" are recoverable under *28 U.S.C. § 1920(2)*. *See 28 U.S.C. § 1920(2)*. Fees incurred in connection with deposition transcripts may be awarded if "the deposition 'was necessarily obtained for use in a case' and was not 'purely investigative.'" *Zotos v. Lindbergh Sch. Dist., 121 F.3d 356, 363 (8th Cir. 1997)* (quoting *Slagenweit v. Slagenweit, 63 F.3d 719, 720 (8th Cir. 1995))*. "'The determination of necessity must be made in light of the facts known at the time of the deposition without regard to intervening developments that later render the deposition unneeded for further use.'" *Id.* (quoting *Barber v. Ruth, 7 F.3d 636, 645 (7th Cir. 1993))*. "The 'underlying inquiry is whether the **[*25]** depositions reasonably seemed necessary at the time they were taken.'" *Id.* (quoting *Manildra Milling Corp. v. Ogilvie Mills, Inc., 76 F.3d 1178, 1184 (Fed. Cir. 1996))*.

Goss seeks an award of the costs it incurred for court reporters for depositions and court proceedings and for transcripts of such depositions and proceedings. In its Amended Petition, Goss seeks $ 76,234.55 in court reporter fees relating to depositions and court proceedings. Goss seeks in its Bill of Costs $ 68,136.70 as reimbursement for fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case. TKS asserts Goss is not entitled to this amount because it has presented no evidence that the transcripts were obtained necessarily rather than for investigative purposes in the case of deposition transcripts or for Goss's convenience in the case of transcripts of court proceedings.

The court has reviewed the documentation provided by Goss and concludes that Goss is entitled to an award of $ 68,136.70 for court reporter fees and transcripts. This amount represents the court reporter fees and transcripts for depositions the court finds would have seemed **[*26]** reasonably necessary at the time they were taken because each of the depositions was used either at trial or in Goss's Motion for Summary Judgment. This amount also includes the expense Goss incurred in obtaining a Real Time trial transcript which the court finds is properly taxed as a cost in this case given the length of the trial and the improbability that Goss attorneys could have taken notes adequate to obviate the need for such transcript during trial.

***3. Fees and disbursements for witnesses***

*28 U.S.C. § 1920(3)* provides for payment of witness fees. The witness fee specified in *§ 1920(3)* is defined in *28 U.S.C. 1821*, which provides:

> (a)(1) Except as otherwise provided by law, a witness in attendance at any court of the United States ... shall be paid the fees and allowances provided by this section.
>
> ***
>
> (b) A witness shall be paid an attendance fee of $ 40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance. **[*27]**
>
> (c)(1) A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance. Such a witness shall utilize a common carrier at the most economical rate reasonably available. A receipt or other evidence of actual cost shall be furnished.
>
> ***
>
> (3) Toll charges for toll roads, bridges, tunnels and ferries, taxicab fares between places of lodging and carrier terminals, and parking fees (upon presentation of a valid parking receipt) shall be paid in full to a witness incurring such expenses.

***

> (d)(1) A subsistence allowance shall be paid to a witness when an overnight stay is required at the place of attendance because such place is so far removed from the residence of such witness as to prohibit return thereto from day to day.
>
> (2) A subsistence allowance for a witness shall be paid in an amount not to exceed the maximum per diem allowance prescribed by the Administrator of General Services, pursuant to section 5702(a) of title **[*28]** 5, for official travel in the area of attendance by employees of the Federal Government ...

*28 U.S.C. § 1821*. *See Crawford Fitting, 482 U.S. at 440-41* ("The witness fee specified in *§ 1920(3)* is defined in *28 U.S.C. § 1821*.") "The Supreme Court has held that '*absent explicit statutory* or contractual *authorization* for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in *28 U.S.C. § 1821* and *§ 1920*." *Neosho R-V Sch. Dist, 315 F.3d at 1031* (quoting *Crawford Fitting, 482 U.S. at 447*).

Goss requests in its Amended Petition an award of $ 1,548,295.09 in expert witness fees. Goss requests in its Bill of Costs an award of $ 4,433.77 for witness fees, which includes $ 4,118.27 in trial witness expenses and $ 315.50 in witness fees for depositions. Goss seeks reimbursement for the expenses of the following witnesses at trial: Raymond Sims, Henry Cobb and Roland Palmatier. Goss also seeks reimbursement for the following witness fees for depositions: James Norris, J. William Cox, John Hall **[*29]** and Frank Tyler. TKS asserts Goss is entitled to recover only the amounts authorized by *28 U.S.C. § 1821*.

Regarding Goss's request in its Amended Petition for an award of $ 1,548,295.09 in expert witness fees, the court finds the 1916 Act provides no explicit authorization for an award of expert witness fees and Goss has not alleged any contractual duty on the part of TKS to pay expert witness fees above and beyond those allowed under *28 U.S.C. § § 1821* and *1920*. Accordingly, the court declines to award to Goss the fees and expenses it incurred in connection with its expert witnesses except as set forth below.

In accordance with *28 U.S.C. § 1821*, Goss is entitled to an award in the following amounts for each of the witnesses who testified at trial and for whom Goss seeks reimbursement for the cost of their attendance.

Goss requests an award in the amount of $ 1,560.50 for Raymond Sims' testimony at trial. The documentation provided by Goss indicates that Mr. Sims testified at trial on November 18 and 19 and December 2, 2003. Accordingly, Mr. Sims is entitled to $ 40 per day for each of these days under *28 U.S.C. § 1821(a)(1)*. **[*30]** The documentation provided by Goss also indicates that Mr. Sims' round trip airfare from Chicago, Illinois to Cedar Rapids, Iowa for both occasions on which he testified was $ 981.48. Goss does not, however, provide a receipt for Mr. Sims' airfare as required by the statute. Nonetheless, the court will assume Mr. Sims traveled at the most economical rate and awards Goss the cost of Mr. Sims' airfare under *28 U.S.C. § 1821(c)(1)*. Finally, it appears as though Mr. Sims arrived in Cedar Rapids on November 16, 2003 and left on November 19, 2003 and then returned to Cedar Rapids on November 30, 2003 and left again on December 2, 2003. Mr. Sims is therefore entitled to $ 425.00 in subsistence allowance under *28 U.S.C. § 1821(d)(1)*. _ In total, Goss is allowed $ 1526.48 in witness fees for Mr. Sims' testimony at trial under *28 U.S.C. § 1821*.

Goss requests an award of $ 1,486.64 in witness fees for Henry Cobb. Mr. Cobb testified at trial on November 18 and 19, 2003. Mr. Cobb therefore is entitled to $ 40 for each day of trial testimony under *28 U.S.C. § 1821(a)(1)*. The documentation provided **[*31]** by Goss in connection with Mr. Cobb's round trip airfare indicates that the cost of Mr. Cobb's round trip ticket from Atlanta, Georgia to Chicago, Illinois was $ 598.00. Mr. Cobb is entitled to this amount under *28 U.S.C. § 1821(c)*. Mr. Cobb drove from Chicago to Cedar Rapids _ and paid $ 5.40 in tolls which may be taxed as a cost under *28 U.S.C. § 1821(c)(3)*. Mr. Cobb also is entitled to a subsistence allowance in the amount of $ 258.00 under *28 U.S.C. § 1821(d)(1)*. In total, Goss is entitled to an award of $ 941.40 for Mr. Cobb's witness fees under *28 U.S.C. § 1821*.

Finally, Goss seeks reimbursement for witness fees of Roland Palmatier in the amount of $ 1,071.13. Mr. Palmatier testified at trial on November 19 and 20, 2003. Accordingly, Goss is entitled to the $ 40 witness fee under *28 U.S.C. § 1821(a)(1)* for each of these days. While Goss did not provide a receipt for Mr. Palmatier's round trip airfare from Durham, New Hampshire to Cedar Rapids, Iowa for trial, it appears the cost of such airfare was $ 554.50. Mr. Palmatier is entitled to this amount under *28 U.S.C. § 1821(c)(1)*. **[*32]** Additionally, Mr. Palmatier is entitled to a subsistence allowance in the amount of $ 258.00 under *28 U.S.C. §*

*1821(d)(1)*, Goss therefore is entitled to an award of fees for Mr. Palmatier in the amount of $ 892.50.

In sum, the court awards to Goss an amount of $ 3,360.38 for trial witness fees under *28 U.S.C. § 1821*. In addition, the court awards to Goss deposition witness fees in the amount of $ 160.00 which represents $ 40.00 per day for each of the four individuals for whom Goss seeks witness fees for depositions. The total amount of witness fees to which Goss is entitled is $ 3,520.38. The court finds such fees properly are taxed as costs under *28 U.S.C. § 1821*.

***4. Fees for exemplification and copies of papers***

*28 U.S.C § 1920(4)* allows fees for "exemplification and copies of papers necessarily obtained for use in the case." Expenses for trial exhibits, including enlargements, may be costs which are allowable under *§ 1920(4)* if such materials are "necessarily obtained for use in the case." *Crues, 768 F.2d at 234*. Further, "the cost of preparing a **[*33]** variety of exhibits has been allowed by many courts, either under *28 U.S.C. § 1920* or as an exercise of judicial discretion. Among these are maps, photographs, charts, and copies of records. Costs that are merely incidental to the trial or are incurred in the preparation for it will not be considered as necessary by the court and will not be allowed." *Evans v. Fuller, 94 F.R.D. 311, 315 (W.D. Ark. 1982)*. "So long as the means of presentation furthers the illustrative purpose of an exhibit, ... it is potentially compensable as exemplification" subject to the determination that the demonstrative aid was necessarily obtained for use in the case pursuant to *28 U.S.C. § 1920(4)*. *Cefalu v. Village of Elk Grove, 211 F.3d 416, 428 (7th Cir. 2000)*. Furthermore, enlarged trial exhibits, demonstrative aids, audiovisual equipment and other multi-media presentations are recoverable as exemplification costs as long as they meet the standard of furthering the illustrative purpose of the exhibits. *Trammel v. BASF Corp., 2002 WL 59114 at *7, 2002 U.S. Dist. LEXIS 383 at *18 (N.D. Ill. 2002)* **[*34]** (citing *Chemetall GmbH v. ZR Energy, Inc., 2001 WL 1104604 at ** 29-32, 2001 U.S. Dist. LEXIS 23716 at *93 (N.D. Ill. 2001)*).

Goss seeks reimbursement for the cost of demonstrative exhibits including charts, graphs and videotaped depositions. Goss also seeks reimbursement for the cost of software Goss used to provide graphic presentations during trial. Goss has provided receipts indicating the total cost of such exhibits and software was $ 73,153.05. The court finds an award in the amount of $ 73,153.05 is justified in this case given the complexity of the issues presented at trial and the enormous amounts of information presented to the jury during trial. The demonstrative exhibits and graphic presentations Goss used at trial expedited Goss's presentation of issues and made trial of this matter more efficient than it would have been without such demonstrative exhibits and graphic presentations.

Goss also seeks an award of $ 482,309.54 in costs for the copying and scanning of documents performed by outside vendors and in-house by Goss's counsel. For in-house copying, Goss was charged $ 0.15 per page. TKS asserts Goss is not entitled to this amount because **[*35]** the documents copied and scanned were not necessarily obtained for use in this case. TKS also points out there is a difference in the amount of $ 3,763.71 between the amount of these costs claimed by Goss and the amount set forth in the invoices provided by Goss in support of this request.

The court concludes an award of $ 482,309.54 for copying and scanning documents is reasonable and appropriate in this case given the document intensive nature of discovery and the sheer volume of exhibits and deposition transcripts used at trial in this case. Accordingly, the court, in its discretion awards to Goss a total amount of $ 555,462.59 under *28 U.S.C. § 1920(4)*.

***5. Compensation of interpreters***

*28 U.S.C. § 1920(6)* provides that a court may tax as costs the "compensation of interpreters." In this regard, Goss seeks an award of $ 54,085.38 for translation and interpreter expenses incurred during the course of the litigation. The court finds Goss's request is a reasonable request which is allowed under *§ 1920(6)* and therefore awards to Goss $ 54,085.35 for translation and interpreter expenses.

***III. CONCLUSION***

In light **[*36]** of the foregoing, Goss's Amended Petition for Fees and Costs Pursuant to *15 U.S.C. § 72* (originally docket no. 427, as amended docket no. 440) is GRANTED in part and DENIED in part as set forth herein. Accordingly, IT IS ORDERED:

(1) The court awards to Goss attorneys' fees and expenses in the amount of $ 3,484,158.00.

(2) The court approves costs in the amount of $ 681,475.05 to be taxed against TKS as detailed below:

(A) Fees of the clerk - $ 270.00;

> (B) Fees of the court reporter for transcripts necessarily obtained for use in this case - $ 68,136.70;

(C) Fees and disbursements for printing and witnesses -$ 3,520.38;

(D) Fees for exemplification and copies of papers - $ 555,462.59; and

(E) Fees for compensation interpreters - $ 54,085.38.

(3) The award of attorneys' fees and costs set forth above shall be imposed upon the court's lifting of the stay of judgment in this case the court imposed by Order dated December 17, 2003.

**IT IS SO ORDERED.**

**DATED** this 2nd day of June, 2004.

LINDA READE